274

Reies **LOPEZ TIJERINA**, individually, and on behalf of Rose Tijerina, Danny Tijerina, Rachel Tijerina, Ira Della Tijerina, Noa Tijerina, Isabel Garcia, individually, and on behalf of her children, Neddy Garcia, Orlando Garcia, Irene Garcia and Jimmy Garcia, Plaintiffs,

v.

Virgil **HENRY** et al., Defendants.

Civ. A. No. 7664.

United States District Court
D. New Mexico.

Dec. 4, 1969.

Frederick J. McCarthy, Legal Aid Society, and John T. Dunn, Albuquerque, N. M., for Isabel Garcia and children and Reies Tijerina and family.

James V. Noble, Asst. Atty. Gen., and E. P. Ripley, Sp. Asst. Atty. Gen. of N. M., Santa Fe, N. M., for State Board of Education of N. M. and its officers: Henry, Comstock, McKinley, Amador, Mayfield, Mortimer, Inmon, Vigil, Murphy and Langley.

Botts, Botts & Mauney, Robert W. Botts, Albuquerque, N. M., for Board of Education of City of Albuquerque and its officers: Jackson, Martinez, Thompson, Willis & Stromberg.

Before LEWIS, Circuit Judge, and LANGLEY and PAYNE, Chief Judges.

## MEMORANDUM OPINION AND ORDER

PER CURIAM.

This matter came to be heard upon the various motions to dismiss filed by defendants in regard to the plaintiffs' Amended Complaint filed May 26, 1969. The Court has heard oral argument and has received briefs and memoranda filed by counsel. This lawsuit is filed as a class action. The general nature of the plaintiffs' claim is that their rights to equal educational privileges under the United States Constitution and under the Treaty of Guadalupe Hidalgo are being unlawfully restricted and denied by defendants on the basis of race, color, natural origin, and economic status.

The plaintiffs allege that they represent two different classes. The first class is designated as "Indo-Hispano, also called Mexican-American and Spanish-American". The plaintiffs allege this class is generally characterized by having Spanish surnames, Mexican, Indian, and Spanish ancestry, and that the class

speaks Spanish as a primary or maternal language. The complaint alleges that the minors of public school age in the Indo-Hispano class constitute over thirty per cent of the children of public school age in the State of New Mexico. In connection with this class, the complaint also designates a class of "non-Indo-Hispano" meaning only white or Caucasian, or Anglo-American. The classes of "Indo-Hispano" or non-Indo-Hispano", as designated in the complaint, do not include either Negroes or Indians.

The second class which the plaintiffs claim to represent is designated as poor. This class is defined as those indigents who would qualify for free legal process under Sections 41–22–5 and 25–1–14, New Mexico Statutes Annotated, 1953 Compilation, as amended.

The defendant, State Board of Education of the State of New Mexico, is sued in its official capacity as the body which is in control of the local school boards throughout the state. The defendant, Board of Education of the City of Albuquerque, is sued both in its official capacity and as a representative of all of the local boards of education in the State of New Mexico. The complaint alleges five different causes of action. However, with regard to this lawsuit being a class action, they will all be treated together.

With respect to all causes of action, the complaint is faulty in several respects. As stated earlier, this lawsuit is intended to be a class action. Rule 23(a) of the Federal Rules of Civil Procedure defines the prerequisites of a class action. Rule 23(a) (4) provides, "One or more members of a class may sue, or be sued, as representative parties on behalf of all only if * * * the representative parties will fairly and adequately protect the interests of the class."

■ There is no allegation in the complaint, and nothing has been filed in the case, or brought up at any of the hearings, or otherwise brought to the attention of the Court which convinces the Court that the plaintiffs will fairly and adequately protect the interests of the class.

■ Rule 23(a) (4) also comes into play with regard to the defendant, Board of Education of the City of Albuquerque, being sued as representative of the class comprised of all of the local school boards in the state. At the oral argument, it became apparent to the Court that the local school boards in the northern part of the state are predominantly composed of Spanish-Americans. This would probably not be true in the southern part of the state, especially the southeastern part of the state. The Board of Education of the City of Albuquerque is comprised of four "Anglo-Americans" and one "Spanish-American". For this reason, in this type of lawsuit, the Court is not convinced that the defendant, Board of Education of the City of Albuquerque, would "fairly and adequately protect the interests of the class" in accordance with Rule 23(a) (4).

■ The Court has, on several occasions, requested the plaintiffs to amend their complaint to more adequately define the class which they represent. While plaintiffs have followed each request with a new amended complaint, they apparently have been unable, or unwilling, to adequately define the class which they represent. Their definition of the class is still too vague to be meaningful. The first characteristic of the class, as defined by the plaintiffs, is that they have Spanish surnames. There are many people in New Mexico who, because of their marriage or the marriage of their ancestors, have Spanish surnames, who are not Spanish-Americans. Similarly, there are many people of Spanish or Mexican extraction who, for the same reason, do not have Spanish surnames.

■ The second characteristic of plaintiffs' class is that they have Mexican, Indian and Spanish ancestry. The Court does not see any way that it could make a determination of what constitutes

Mexican, Spanish, and Indian ancestry. The complaint states that Indians are not members of the class, so presumably, there must be some Spanish or Mexican ancestors for everyone in the class. However, the complaint is silent as to whether people with some Spanish or Mexican and Indian ancestors, as well as ancestors who are of some other extraction, i. e. French, English, Danish, etc., would be included as members of the class. These considerations make this characteristic so vague as to be meaningless.

The third characteristic of the plaintiffs' class is that they speak Spanish as a primary or maternal language. There are many people in New Mexico who are bi-lingual, but it would be impossible to determine whether Spanish or English is their primary or maternal language. This is complicated by the fact that, for at least the last fifty years, there has been compulsory education in the State of New Mexico, and classes have been conducted in English. For the above-stated reasons, the three characteristics listed by plaintiffs, in defining the class which they represent, are inadequate to meaningfully define their class.

The second class that plaintiffs claim to represent is designated as "poor" and is defined as those people who would qualify for free legal process under Sections 41–22–5 and 25–1–14, New Mexico Statutes Annotated, 1953 Compilation, as amended.[1]

The Court does not find that this is an adequate definition of a class. Generally, these sections provide that people, who are too poor to pay for legal process, are entitled to free process. Section 41–22–5, New Mexico Statutes Annotated, 1953 Compilation, as amended, does, in Part B, list a number of considerations for a judge to take into account in determining if a person is indigent, but it does not delineate when a person is indigent. The task of applying all of the factors listed in that section to each person in a state and then making a subjective determination of whether or not they are poor would be an impossible task. The Court does not believe that these statutes were ever intended to define poor people or that it is proper to state that poor people are those indigents who qualify for free legal process under the statute.

For the above-stated reasons, the complaint is not sufficient for a class action and should be dismissed as a class action. However, in the interest of the efficient administration of justice, the Court feels

1. Section 41–22–5, New Mexico Statutes Annotated, 1953 Compilation, as amended.—Determination Of Indigency.

A. The determination of whether a person covered by section 60 (41–22–3) of the Indigent Defense Act (41–22–1 to 41–22–10) is a needy person shall be deferred until his first appearance in court or in a suit for payment or reimbursement under section 66 (41–22–9) of the Indigent Defense Act, whichever occurs earlier. Thereafter, the court concerned shall determine, with respect to each proceeding, whether he is a needy person.

B. In determining whether a person is a needy person and the extent of his inability to pay, the court concerned may consider such factors as income, property owned, outstanding obligations and the number and ages of his dependents. Release on bail does not necessarily prevent him from being a needy person. In each case, the person shall, subject to the penalties for perjury, certify in writing or by other record material factors relating to his ability to pay as the court prescribes.

C. To the extent that a person covered by section 60 (41–22–3) of the Indigent Defense Act is able to provide for an attorney, the other necessary services and facilities of representation and court costs, the court may order him to provide for their payment.

Section 25–1–14, New Mexico Statutes Annotated, 1953 Compilation, as amended. Pauper May Have Free Process.— If any person wishing to institute a suit, or having done so, shall make oath that he is too poor to pay the costs, he shall have all and any process of the court free of costs. (This section was repealed by Laws 1968, ch. 69, § 69, effective July 1, 1969.)

that it would be proper to look at the merits of certain of plaintiffs' contentions.

It is the Court's understanding that what the plaintiffs are really seeking in this lawsuit is to have all classes in all subjects in the public schools taught in both English and Spanish. This would effectively require the school system to double its facilities in classrooms, books and teachers. The plaintiffs contend that this is guaranteed to them by Articles VIII and IX and the Protocol of the Treaty of Guadalupe Hidalgo.[2]

 Plaintiffs' reliance on the Treaty in this instance is misplaced. The Court is unable to find anything in the Treaty of Guadalupe Hidalgo that would confer

2. TREATY OF PEACE BETWEEN THE UNITED STATES AND MEXICO.—executed at the City of Guadalupe Hidalgo, February 2, 1848. Ratification exchanged at Queretaro, May 30, 1848. Proclamation made July 4, 1848. (This Treaty is found at page 362 of Volume 1, New Mexico Statutes Annotated, 1953 Compilation.)

In the Name of Almighty God:

The United States of America and the united Mexican states, animated by a sincere desire to put an end to the calamities of the war which unhappily exists between the two republics, and to establish upon a solid basis relations of peace and friendship, which shall confer reciprocal benefits upon the citizens of both, and assure the concord, harmony, and mutual confidence wherein the two people, should live, as good neighbors, have for that purpose appointed their respective plenipotentiaries—that is to say, the President of the United States has appointed Nicholas P. Trist, a citizen of the United States, and the President of the Mexican republic has appointed Don Luis Gonzaga Cuevas, Don Bernardo Couto, and Don Miguel Atristain, citizens of the said republic, who, after a reciprocal communication of their respective full powers, have, under the protection of Almighty God, the Author of Peace, arranged, agreed upon, and signed the following

TREATY OF PEACE, FRIENDSHIP, LIMITS, AND SETTLEMENT BETWEEN THE UNITED STATES OF AMERICA AND THE MEXICAN REPUBLIC

\* \* \* \* \*

ARTICLE VIII—RIGHTS OF MEXICANS ESTABLISHED IN TERRITORIES CEDED TO UNITED STATES—Mexicans now established in territories previously belonging to Mexico, and which remain for the future within the limits of the United States, as defined by the present treaty, shall be free to continue where they now reside, or to remove at any time to the Mexican republic, retaining the property which they possess in the said territories, or disposing thereof, and removing the proceeds wherever they please, without their being subjected, on this account, to any contribution, tax, or charge whatever.

Those who shall prefer to remain in the said territories, may either retain the title and rights of Mexican citizens, or acquire those of citizens of the United States. But they shall be under the obligation to make their election within one year from the date of the exchange of ratifications of this treaty; and those who shall remain in the said territories after the expiration of that year, without having declared their intention to retain the character of Mexicans, shall be considered to have elected to become citizens of the United States.

In the said territories, property of every kind, now belonging to Mexicans not established there, shall be inviolably respected. The present owners, the heirs of these, and all Mexicans who may hereafter acquire said property by contract, shall enjoy with respect to it guaranties equally ample as if the same belonged to citizens of the United States.

ARTICLE IX—HOW MEXICANS REMAINING IN CEDED TERRITORIES MAY BECOME CITIZENS OF THE UNITED STATES—Mexicans who, in the territories aforesaid, shall not preserve the character of citizens of the Mexican republic, conformably with what is stipulated in the preceding article, shall be incorporated into the Union of the United States, and be admitted at the proper time (to be judged of by the congress of the United States) to the enjoyment of all the rights of citizens of the United States, according to the principles of the Constitution; and in the meantime shall be maintained and protected in the free enjoyment of their liberty and property, and secured in the free exercise of their religion without restriction.

upon the plaintiffs the rights which they say are included therein. The Treaty does not contemplate in any way the administration of public schools. In addition, we are not of the opinion that the Treaty confers any proprietary right to have the Spanish language and culture preserved and continued in the public schools at public expense. For these reasons, the plaintiffs' first cause of action should be dismissed with prejudice.

■ The second cause of action really seeks reapportionment of the boards of education, both for the City of Albuquerque and for the entire state. Since the Court has ruled that the Albuquerque Board cannot fairly and adequately represent the interests of all the local boards, this cause of action only stands as to the city in its individual capacity. The allegations in regard to this cause of action are not specific and really request a judicial investigation to see if the Board is properly apportioned. The Court finds that this cause of action should also be dismissed but, since if this suit were brought on behalf of the properly defined class alleging specific facts, a cause of action would have been stated, the Court finds that such dismissal should be without prejudice.

■ The third and fourth causes of action are very similar in nature. The third cause of action alleges that the State Board of Education has discriminated against the plaintiffs' class in varying ways. The fourth cause of action is almost identical to the third except that it alleges discrimination on the part of the Board of Education of the City of Albuquerque. These allegations are all stated as conclusions. There is no allegation of any specific facts which would show discrimination. The only allegation is that the Board of Education discriminated against the plaintiffs. These causes of action are based on the same Articles of the Treaty of Guadalupe Hidalgo as the first cause of action. For the same reason stated in connection with the first cause of action, the Court feels that the third and fourth causes of action should be dismissed with prejudice.

■ The fifth cause of action restates the allegations of the second, third and fourth causes of action, except that it substitutes the class of "poor" for the class of "Indo-Hispano". The plaintiffs allege here, as in the other causes of action, that their action is based in part on the Treaty of Guadalupe Hidalgo. This is an unsound position as that Treaty has nothing to do with any rights that "poor" people may have. It is a treaty of peace between the United States and Mexico and the Articles cited by the plaintiffs deal with property rights of Mexican nationals who had property in what is now the United States. For this reason, insofar as the fifth cause of action incorporates the third and fourth causes of action, it should be dismissed with prejudice. For the reasons stated above in connection with the second cause of action, the fifth cause of action, insofar as it incorporates the second cause of action, should be dismissed without prejudice.

It is, therefore, ordered and adjudged that the plaintiffs' first, third and fourth causes of action be, and the same are hereby dismissed with prejudice.

It is further ordered that plaintiffs' second cause of action be, and the same is hereby dismissed without prejudice.

It is further ordered that plaintiffs' fifth cause of action, insofar as it incorporates plaintiffs' third and fourth causes of action be, and the same is hereby dismissed with prejudice and, insofar as the fifth cause of action incorporates the second cause of action, that it be, and the same is hereby dismissed without prejudice.