**Martin SUSSMAN, Plaintiff,**

v.

**VORNADO, INC., Frederick Zissu, and Alfred Zasloff, Defendants.**

Civ. A. No. 78–422.

United States District Court,
D. New Jersey.

July 13, 1981.

Fredric J. Gross, Haddonfield, N. J., Haggerty & Donohue by John P. Dizzia, Union, N. J., for plaintiff.

Gladstone, Hart & Rathe by Max Manshel and Marvin H. Gladstone, Hackensack, N. J., for defendants.

OPINION

SAROKIN, District Judge.

Plaintiff, Martin Sussman, on behalf of himself and others similarly situated, complains that his former employer, Vornado, Inc., and two of its executive officers discriminated against him on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"). Plaintiff seeks class certification on counts of breach of contract, state age discrimination, ERISA and denial of premium and overtime pay in violation of the New Jersey Wage and Hour Law.

FACTUAL BACKGROUND

Plaintiff alleges that during the course of an eight-week Retail Clerk's strike during 1976, he and other Vornado managerial personnel worked in excess of 40 hours per work week. Forty per cent or more of those hours were devoted to activities not exempt from the overtime premium pay requirements of the respective controlling statutes.[1] Vornado is alleged to have failed to provide the premium compensation mandated by law.

Immediately after the strike, plaintiff alleges that he and others were promised pension participation effective July 31, 1977.[2] Plaintiff and others shortly thereafter, but prior to the pension participation date, were terminated or compelled to resign.

Plaintiff now moves for certification of four classes, appropriate for each cause of action. Defendant crossmoves to limit the class and to strike certain counts.

DISCUSSION

I. ADEA

The Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 et seq., prohibits discrimination in employment based upon age with respect to individuals who are at least 40 years of age but less than 65 years of age. 29 U.S.C. § 623. The statute proscribes discriminatory employment practices including failure to hire, discharge, denial of employment opportunities and discrimination with respect to the terms and conditions of employment due to an individual's age. Employment agencies are also prohibited from referring or classifying any person on the basis of that person's age. Retaliatory measures are proscribed where an individual has opposed a prohibited practice, filed a charge, testified or participated in an investigation or proceeding under the ADEA. 29 U.S.C. § 623(d).

The statute has a two-year statute of limitations, incorporating the limitation prescribed in the Portal-to-Portal Act applicable to the Fair Labor Standards Act. 29 U.S.C. § 626(e). See Coleman v. Jiffy June Farms, Inc., 458 F.2d 1139, 1142 (5th Cir. 1971), cert. denied, 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972).

The ADEA imposes a number of procedural requirements which must be fulfilled prior to the institution of a complaint in a court proceeding.[3] The statute provides

---

**1.** Count 6 of the Complaint alleges a violation of the federal Fair Labor Standards Act, 29 U.S.C. § 215, brought by plaintiff Sussman and a statutory class. Similar to the federal cause of action, count 7 charges that under the New Jersey State Wage and Hour Law, N.J.Stat. Ann., § 34:11–56a et seq., the defendant failed to pay certain managerial personnel their requisite overtime wages.

**2.** Plaintiff bases this claim upon the receipt of a letter from the defendant Frederick Zissu of Vornado which stated:

I am pleased to announce that effective July 31, 1977 all employees other than corporate officers will be covered by a pension. In the future, you will receive a booklet describing the Vornado East Coast Retail Employee Retirement Plan.

Letter to Management, Clerical and other Non-Store Employees from Frederick Zissu, Vornado, Inc., dated October 28, 1976.

**3.** The 1978 amendments to the statute have changed many of the procedural requirements of the Act. 29 U.S.C. § 626(d)(1) (1976), as amended by Age Discrimination in Employment Act Amendments of 1978, Pub.L. No. 95–256 § 4(d)(1), 92 Stat. 189 (1978). The alleged unlawful practices in this case occurred before the amendments were effectuated. The instant case is therefore governed by the original statute. For a detailed discussion of the 1978 amendments to the ADEA, see Note, The Age Discrimination in Employment Act: Proce-

that a complainant must give 60 days' notice to the Secretary of Labor[4] of his intent to sue, which notice must also be filed within one hundred and eighty days after the alleged unlawful practice occurred. The time period is extended to three hundred days in "deferral" states[5]—that is, states which have their own age discrimination statutes. After the Secretary has received the notice of intent to·sue, a conciliation period is commenced in which the Secretary must notify the prospective defendants of the pending charges and at the same time seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference and persuasion. 29 U.S.C. § 626.

In this case, plaintiff Sussman was discharged from his position at Vornado on May 24, 1977. His duties were allegedly assumed by his former assistant, a man much younger than plaintiff, who was compensated at a lower rate than plaintiff.

Plaintiff visited the local Department of Labor office and complained of the alleged unlawful practices at Vornado. He filled out an intake form (See Exh. 19a–20a) and was personally questioned about his grievance by a Department of Labor employee. Shortly thereafter plaintiff filed a formal age discrimination complaint with the New Jersey Division on Civil Rights.[6] In October 1977, plaintiff notified the Secretary of Labor of his intent to sue after the required 60-day waiting period. A class action suit was commenced by plaintiff on March 1, 1978 in federal district court.

Defendant Vornado seeks to limit the proposed ADEA class on three bases: first, that this class must be limited to those persons who have met the statutory requirement of notification to the Secretary pursuant to 29 U.S.C. § 626(d); second, that only those persons who could have timely filed a notice of intent to sue as of September 23, 1977, can be included in the class; and, third, those persons who, after having filed notices of intent to sue, failed to comply with the 60-day waiting period are barred from the class.

### 1. Certification of ADEA Count

The ADEA has adopted the class action[7] provision of 29 U.S.C. § 216, Fair Labor Standards Act ("FLSA") which provides:

*dural and Substantive Issues in the Aftermath of the 1978 Amendments*, 1979 U. of Illinois L.F. 655.

4. The court notes that on July 1, 1979, the responsibility and authority for enforcement of the ADEA was transferred from the Department of Labor to the Equal Employment Opportunity Commission. See Reorganization Plan No. 1 of 1978, 43 Fed.Reg. 19,807 (1978). At the time the plaintiff commenced this action the applicable federal agency was the Department of Labor.

5. New Jersey has been a "deferral" state since 1962 when the state "Law Against Discrimination," N.J.Stat.Ann. § 10:5–1 *et seq.* (West 1979) was amended to include discrimination based upon age. N.J.Stat.Ann. § 10:5–4 (West 1976).

6. At the time of the alleged discrimination against plaintiff Sussman, the statute provided that an aggrieved person could file a complaint with the state Attorney General against the employer alleged to have committed the unlawful employment practice. N.J.Stat.Ann. § 10:5–13. After the filing of the Complaint the Attorney General is empowered to investigate, commence conciliation measures or compel compliance with the Act. N.J.Stat.Ann. § 10:5–14.

In 1979 the state Law Against Discrimination was amended to provide a choice of forums to an aggrieved person. Any person who claims to have been discriminated against may now initiate a suit in the Superior Court or may file a complaint with the State Division on Civil Rights. N.J.Stat.Ann. § 10:5–13 (West Supp. 1980–1981).

7. The Fifth Circuit in *LaChappelle v. Owens Illinois, Inc.*, 513 F.2d 286 (5th Cir. 1975) held that Rule 23 of the Federal Rules of Civil Procedure is inapplicable to age discrimination class action. The court stated:

There is a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by FLSA § 16(b). In a Rule 23 proceeding a class is described; if the action is maintainable as a class action, each person within the description is considered to be a class member, and, as such, is bound by judgment, whether favorable or unfavorable, unless he has 'opted out' of the suit. Under § 16(b) of FLSA, on the other hand, no person can become a party plaintiff and no person will be bound by or may benefit from judgment unless he has affirmatively 'opted into' the class; that is, given his written filed consent.

Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

In order to maintain a class action, 29 U.S.C. § 216(b), 29 U.S.C. § 626(b), the FLSA only requires that each party plaintiff must "opt-in" by filing a written consent with the court in which the action is being litigated. The result is that a person cannot become a party plaintiff, or be bound by, or benefit from any judgment entered in a § 216 class or group action unless he or she has affirmatively opted into the class.

Pursuant to the Act, the plaintiff class may seek any appropriate legal or equitable relief which includes "judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section." 29 U.S.C. § 626(b).

■ In order to certify the ADEA class the proper inquiry for this court is whether the plaintiff is "similarly situated" to the other terminated employees or those compelled to resign. If so, the others may join in the action as party plaintiffs, if they file their written consent with this court.

In his complaint the plaintiff alleges that he and other Vornado employees were fired or forced to resign in violation of the ADEA. These employees departed from the company on the eve of pension participation effective July 31, 1977. In addition, it is alleged that younger individuals replaced the departing employees thereby effecting a dual goal—pension funds would

not be depleted by the older employees soon to retire and lesser salaries would be paid to the younger and less experienced replacements.

It is evident from the undisputed facts that those employees who were terminated in the wake of the retail clerks' strike are similarly situated as required by the statute. The court, therefore, will certify the class, allowing for those interested individuals to opt-in to the present suit.

### 2. Limitation of the Class

#### A. Adequate Notice to the Secretary of the Class Action

The ADEA provides that no civil action may be commenced until the complainant has given the Secretary of Labor at least sixty days' notice of an intent to file such an action. 29 U.S.C. § 626(d). First, the defendants contend that the potential class members must individually file notices in order to become class members. Second, the defendants argue that plaintiff has not met the statutory requirement of notification to the Secretary that he was filing a suit on behalf of himself and all others similarly situated because the actual notice was inadequate. Since there was not any notice of plaintiff's intent to proceed as a class action, the defendants claim plaintiff is precluded from proceeding now in that manner.

The issues then are whether unnamed class members must comply individually with the notice requirements, and, did plaintiff provide the Secretary with adequate notice that he was bringing an action on behalf of others similarly situated.

There is a conflict among the federal courts as to whether unnamed class members must individually notify the Secretary.[8] The Ninth Circuit in *Bean v. Crock-*

---

513 F.2d 286 at 288 (citations omitted). *But see Rodriguez v. Taylor*, 428 F.Supp. 1118 (E.D. Pa.1976), *rev'd on other grounds*, 569 F.2d 1231 (3d Cir. 1977) (Rule 23 class action permitted without discussion).

8. At least two courts have ruled that class members must individually comply with the procedural notice requirements. *Price v. Maryland Casualty Co.*, 561 F.2d 609 (5th Cir. 1977); *Berry v. Crocker National Bank*, 13 FEP 673, 681 (N.D.Cal.1976).

*er National Bank*, 600 F.2d 754 (9th Cir. 1979) stated that only the named plaintiff must comply with the notice requirements.

The ADEA's broad remedial purposes of prohibiting arbitrary age discrimination and of promoting the employment of older persons based on their ability rather than age are best served by an interpretation of 29 U.S.C. § 216(b) that permits similarly situated complainants to join in an action as unnamed parties so long as a named plaintiff has complied with the notice requirements of 29 U.S.C. § 626(d).

*Id.* at 759.

First, the *Bean* court compared the ADEA statutory scheme with Title VII, analogizing it with a Title VII representative suit, wherein unnamed class members need not individually bring a charge with the EEOC in order to join the litigation.

As suggested by the Ninth Circuit, this analogy to Title VII became more persuasive after the Supreme Court ruled in *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979), that under the ADEA a grievant must resort to appropriate administrative remedies in deferral states prior to seeking relief in federal court. Limiting the scope of the decision, the Supreme Court added that the above ruling "governs only claims for individual relief, such as the present case. Nothing in our decision, in anywise disturbs the rule of *Albemarle v. Moody*[9] concerning the rights of unnamed parties in plaintiff class actions." 441 U.S. at 758 n.6, 99 S.Ct. at 2073 n.6 (citations omitted). Therefore, similar to Title VII, the ADEA permits unnamed parties in a class action to join in litigation without having personally complied with the strict notice requirements of the statute. *See* 600 F.2d at 759.

Second, the court of appeals reasoned that the purpose of the notice requirement, to allow the Secretary to seek to eliminate any unlawful practices by conciliation, could be met without requiring each potential grievant to file notice of intent to sue. In that case there had been a "collective" notice to sue in which several named discharged Crocker employees on behalf of themselves and others alerted the Secretary to possible ADEA violations by Crocker affecting the "older" employees at the bank who were discharged at the same time. The court of appeals found that such notice constituted sufficient notice to the Secretary that there was "a pattern of unlawful conduct transcending an isolated individual claim and that they should act accordingly." *Id.* at 760.

In *Price v. Maryland Casualty Co.*, 561 F.2d 609 (5th Cir. 1977) the Fifth Circuit presented another view with respect to individual notices to the Secretary. Plaintiff Price alleged that his employers forced him to take an early retirement on the basis of impermissible age considerations. Plaintiff moved for certification of a class which was denied. The court of appeals stated that "only those members who filed a notice of intent to sue with the Secretary of Labor, pursuant to 29 U.S.C. § 626(d) and who had filed a written consent to becoming plaintiffs in the action would be included in the class." *Id.* at 610–11.

As discussed *supra*, the purpose of the notice requirement is to "eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion."[10] Additionally, the ADEA has an

---

However, other courts have held that class members need not file their own notice in order to opt-in. *Eq. Pandis v. Sikorsky Aircraft Div.*, 16 FEP 589 (D.Conn.1977); *Cavanaugh v. Texas Instruments, Inc.*, 440 F.Supp. 1124 (S.D. Texas 1977); *Locasio v. Teletype Corp.*, 74 F.R.D. 108 (N.D.Ill.1977); *Forman v. Block Drug Co.*, 16 FEP 414 (E.D.N.Y.1977).

**9.** In *Albemarle v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) the Supreme Court held that backpay could be awarded on a class basis under Title VII without exhaustion of

administration procedures by the unnamed class members. *Id.* at 414 & n.8, 95 S.Ct. at 2370 & n.8.

**10.** Congress has delegated to the Secretary and now the EEOC a unique role which mandates conciliation and mediation in its efforts to enforce the Act. It was intended by Congress "that the responsibility for enforcement, vested in the Secretary by § 7 [29 U.S.C. § 626], be initially and exhaustively directed through informal methods of conciliation, conference and

overall remedial purpose to insure that hiring and firing decisions are based on objective evaluations of an individual's potential for job performance, rather than on misconceptions about the effects of age on ability. The rationale stated by the Ninth Circuit in *Bean v. Crocker National Bank, supra,* wherein a class action was permitted to proceed although some of the class members had not individually complied with the statutory notice requirements, is conducive to the purposes stated above. When at least one individual has complied with the statutory requirements, the Secretary is afforded the opportunity to rectify unlawful discriminatory practices as long as notice is given that there was more than an individual instance of discriminatory conduct. Therefore, the notice requirement is satisfied, as well as the remedial purpose of the statute, by allowing similarly situated complainants to join in the action where the named plaintiff has complied with the statutory notice requirements and alerted the Secretary that he is pursuing the action on behalf of class. *See Bean v. Crocker National Bank, supra,* at 759.

█ The second inquiry is whether plaintiff Sussman's actual notice of a class action was adequate. Defendants argue that the named plaintiff in this case did not give the Secretary sufficient notice that he was acting on behalf of himself and others similarly situated. Plaintiff Sussman, acting *pro se* at that stage of the proceedings, filed an administrative complaint with the United States Department of Labor dated July 11, 1977. On that document an interviewer noted that the "layoffs [were] still continuing." Plaintiff's Brief at 20a. The Secretary, therefore, was on notice that any effective effort to conciliate would be on behalf of a group, and not an individual. Indeed, during the conciliation period additional claims were discussed with the defendants at a meeting between the Department case worker and Judith Forsyth, a Vornado employee. Therefore, although the plaintiff failed to indicate with specificity that he was proceeding as a class in his notice to sue, the Secretary was on notice that there was a practice of terminations based upon age and proceeded with conciliation based upon that knowledge fulfilling the purpose of the notice requirement of the statute.

## B. *Limitation of the Class Based Upon Timeliness*

The statute provides that the notice of intent to sue [11] must be filed within one hundred and eighty days after the alleged unlawful practice occurred, or three hundred days in a deferral state.[12]

The defendant contends that the proposed class must be limited to only those persons who could have timely filed a notice of intent to sue as of September 23, 1977,[13] the date upon which claims would otherwise be timebarred. The defendant contends that such claims could not be revived by the commencement of a class action suit. At the other end of the spectrum, plaintiff contends that the "opt-ins" are only time limited by the two-year statute of limitations applicable to the ADEA.

Two questions are presented to this court: first, are the timeliness requirements of § 626(d) which apply to unnamed class members governed by the 180-day rule or the 300-day rule for "deferral" states; second, must unnamed class members comply with the timeliness requirement or with the statute of limitations of two years?

persuasion and formal methods be applied only in the ultimate sense." 113 Cong.Rec. 34,748 (1967); see S.Rep. No. 723, 90th Cong., 1st Sess. 5 (1967), U.S.Code Cong. & Admin.News 1967, 2213. See also *Comment, The Age Discrimination in Employment Act: New Incentive for Private Enforcement,* 17 Santa Clara L.Rev. 405, 407–13 (1977).

11. The present version of the statute requires a complainant to file a charge with the EEOC instead of a notice of intent to sue to the Secretary of Labor. 29 U.S.C. § 626(d).

12. *See supra* at 3 and n.4.

13. The effect of this limitation would be to exclude as class members any individual who was fired or forced to resign prior to March 27, 1977, which is 180 days prior to Sussman's notice of intent to sue.

The Third Circuit recently enunciated in *Davis v. Calgon Corp.*, that in deferral states, the plaintiff must file within 300 days of the alleged discriminatory conduct. 627 F.2d 674 (3d Cir. 1980). In that case plaintiff filed a charge with the Secretary of Labor 223 days after his discharge. Ten days earlier the plaintiff had filed a state complaint with Pennsylvania, a deferral state. The district court dismissed the complaint on the ground that plaintiff had not filed his charge with the Secretary of Labor within 180 days. Acknowledging the 300-day exception for deferral states, the lower court held that it is available only when the plaintiff has actually filed timely with the state.

■ Reversing the dismissal, the court of appeals, in a *per curiam* opinion stated:

Nothing in the language of § 626(d)(2) imposes on deferral-state plaintiffs a duty to file with the state within 180 days to be entitled to the extended filing period in which to file with the Secretary. Regardless of what our own conclusions would be, we find the statements in *Mohasco* control disposition of this issue, and we refuse to "read in a time limitation provision that Congress has not seen fit to include." Therefore, we hold that a plaintiff in a deferral state is entitled to the extended period provided by § 626(d)(2) regardless of whether he has filed a state administrative complaint within 180 days after the alleged discrimination occurred.

*Id.* at 677. In other words, regardless of compliance with state time requirements, all potential ADEA complainants are entitled to the 300-day period in which to file a notice with the Secretary in a deferral state.

In reaching this decision, the Third Circuit placed great reliance upon the recent decision in *Mohasco Corp. v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980) wherein the Supreme Court adopted a literal reading of the filing provisions of Title VII. In *dictum*, the Supreme Court addressed the issue of whether a complainant in a deferral state is obligated to file with

the state within 180 days in order to protect a later federal action. Referring to *Olson v. Rembrandt Printing Co.*, 511 F.2d 1228 (8th Cir. 1975) where the Eighth Circuit mandated filing with the state agency within 180 days even in deferral states, the Supreme Court found such a construction was inconsistent with the express words of Title VII and its legislative history. That Court stated that no "court should read in a time limitation provision that Congress has not seen fit to include at least when dealing with 'a statutory scheme in which laymen, unassisted by trained lawyers initiate the process.' " 447 U.S. at 816 n.19, 100 S.Ct. at 2491 n.19 (citations omitted).

This concept is applicable to ADEA cases for two reasons, as the Third Circuit has persuasively noted in *Calgon*. First, when rejecting the *Olson* decision in *Mohasco*, the Supreme Court cited *Ciccone v. Textron Inc.*, 616 F.2d 1216 (1st Cir. 1980), an ADEA case in which the First Circuit affirmed a dismissal of the complaint by the district court for failure to file a charge within 180 days of the alleged violation in a deferral state. The inescapable inference to be drawn is that the 300-day limitation is not only applicable to Title VII but also to the ADEA, based upon the same reasoning discussed above. The second reason is that the Supreme Court has applied Title VII principles to ADEA where the statutory sections in contention are similar. *See Evans, supra.*

The larger question looms, however, as to whether the unnamed class members must comply with the timeliness procedural requisite at all or merely with the statute of limitations provision of two years.

Plaintiff argues that the unnamed class members are entitled to opt-in to the class so long as the statute of limitations has not yet run. Reliance is placed upon the Second Circuit ADEA discussion in *Reich v. Dow Badisch Co.*, 575 F.2d 363 (2d Cir. 1978) wherein the court ruled that failure to meet the sixty-day notice requirements of the statute

does not extinguish the employee's substantive right; it does terminate the individual's right to commence a private civil

action in his own name, but the Secretary retains the right to sue to enforce the grievant's rights wholly without reference to the notice requirements. The Secretary's right to sue continues until the expiration of the statute of limitations, that is, for two years at least, or, in the case of a willful violation, for three years.

*Id.* at 367–68 (citations omitted). The Secretary has the ability to sue under the ADEA in the name of those potential class members who failed to timely file a notice of intent to sue. *Id.; see Marshall v. Chamberlain Manufacturing Corp.*, 601 F.2d 100 (3d Cir. 1979); *Rogers v. Exxon Research Engineering Co.*, 550 F.2d 834 (3d Cir. 1977); *Dunlop v. Crown Cork & Seal Co.*, 405 F.Supp. 774 (D.Md.1976). However, there is no authority, statutory or otherwise, which compels extending the rights and duties of the Secretary to a named representative in a class action suit.

At least one district court has concluded that claims that were time-barred on the date that plaintiff filed his suit cannot be revived by the commencement of a putative class action. *Pandis v. Sikorsky Aircraft Division of U.T.C.*, 431 F.Supp. 793, 798 (D.Conn.1977). That court examined the holdings of similar Title VII cases and found that under Title VII a class action plaintiff cannot represent persons who could not have filed a charge with the EEOC at the time he filed his charge. Consequently, the district court ruled that

[S]ince there is no reason to apply a more lenient rule to an ADEA class action, Voos [the putative class member] can be allowed to "opt in" to the Pandis suit only if Voos could have timely filed his own administrative charges on the date that Pandis sent his notice to the agency.

*Id.* at 798.

■ In this circuit, the Court of Appeals determined that in Title VII class actions, those employees who could not have filed a charge with the EEOC at the time the named plaintiff filed his charge could not be represented in the suit. *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 246 (3d Cir. 1975). Employing a Title VII analogy based upon *Wetzel*, only those putative class members who could have timely filed a notice of intent to sue as of September 23, 1977 [14] can be included in this class.[15]

## C. Individual Compliance with the Sixty Day Waiting Period

Civil actions may not be commenced under the ADEA until the individual filing suit has given the Secretary at least sixty days' notice of an intent to file such an action. 29 U.S.C. § 626(d). Defendants argue that at least two "opt-ins" are prohibited from joining the class suit because they commenced a civil action prior to the end of their sixty-day waiting period. George Lewis filed a notice of intent to sue on February 10, 1978, alleging a discriminatory termination on September 30, 1977. Lewis then opted-in to plaintiffs' suit on March 28, 1978. Gino Delvescovo was terminated on January 1, 1978 and filed a notice of intent to sue on March 31, 1978. His opt-in form to plaintiff's action was dated March 28, 1978. See Affidavit of Judith Forsyth at 21–22. Therefore, Lewis opted-in to this lawsuit forty-six days after he filed his notice of intent to sue while Delvescovo opted in three days before he filed a notice of intent to sue. Meanwhile, the named representative for the class action suit, Martin Sussman, had filed his complaint in federal district court on March 1, 1978.

The Act provides that the complainant may not institute any action until the Secretary has been given "not less than sixty

---

**14.** Since the 300-day rule is applicable, the cutoff date for the occurrence of discriminatory acts is November 27, 1976.

**15.** Plaintiff suggests that if the court rejects his statute of limitations analysis, he is prepared to prove that the "equitable tolling" doctrine applies to those opt-ins who otherwise would have their claims dismissed for failure to timely file a notice of intent. If plaintiff desires to pursue this claim of equitable tolling, he must make an appropriate motion, accompanied by the proper affidavits, in accordance with the Federal Rules of Civil Procedure.

days' notice of an intent to file such action." 29 U.S.C. § 626(d). This waiting period provides the Secretary with an opportunity to eliminate the alleged illegal practices by conciliation in order to avoid costly and lengthy litigation.

Two recent ADEA cases have upheld the waiting period requisite and dismissed suits for failure to comply with that statutory provision. In *Rucker v. Great Scott Supermarket*, 528 F.2d 393 (6th Cir. 1976) the Sixth Circuit construed the sixty-day-notice rule to mandate that failure to afford the Secretary sixty days' notice of his intent to sue requires dismissal of the action unless "the special facts of the case warrant the granting of equitable relief." *Id.* at 395. Similarly, in *Berry v. Crocker National Bank*, 13 FEP 673 (N.D.Cal.1976) the district court granted summary judgment against one of the plaintiffs for noncompliance with the procedural requisites of § 626 of the ADEA after filing a complaint only forty nine days after providing notice to the Department of Labor. *Id.* at 678. *Accord Edwards v. Kaiser Aluminum & Chemical Sales, Inc.*, 515 F.2d 1195 (5th Cir. 1975); *Cannon v. University of Chicago*, 559 F.2d 1063 (7th Cir. 1976), *rev'd on other grounds*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560. See also, Sheeder, *Procedural Complexity of the Age Discrimination in Employment Act: An Age-Old Problem*, 18 Duquesne L.Rev. 241, 246–48 (1980).

This circuit has yet to rule upon the applicability of the sixty-day rule to opt-ins where a class action suit has already been filed. Although inapposite, the above cases are helpful in deciding this issue, however, because they demonstrate the court's concern for the opportunity to conciliate prior to instituting suit.

■ In the instant case, the class action was filed by the named plaintiff on March 1, 1978. Opt-ins Lewis and Delvescovo joined in the litigation after the named plaintiff had commenced suit, albeit prior to the running of their individual waiting peri-

ods. Conciliation had already been attempted on behalf of the named plaintiff and had failed. These facts in concert with the general scheme of the statute with respect to conciliation convince the court that Lewis and Delvescovo are proper opt-ins.

This decision in no way diminishes the importance of the waiting period rule. The Act provides that during the waiting period the Secretary shall be given the opportunity to settle the complaint informally without having to resort to litigation. This purpose has been served where the named plaintiff in a class action suit has presented the complaint to the Secretary and allowed the mandatory waiting period to run prior to filing in district court.

### D.  State Action Superseded by ADEA

Count 2 of the Complaint alleges age discrimination in violation of New Jersey State Law.[16] Defendants argue that this state discrimination action is superseded by the ADEA, 29 U.S.C. § 633(a), which states:

(a) Federal action superseding State action. Nothing in this Act shall affect the jurisdiction of any agency of any State performing like functions with regard to discriminatory employment practices on account of age except that upon commencement of action shall supersede any State action.

29 U.S.C. § 633(a).

The courts have presented two divergent interpretations of this passage from the Act. In *Pandis v. Sikorsky Aircraft Division of United Technologies Corp.*, 431 F.Supp. 793 (D.Conn.1977), a federal district court found that the exercise of pendent jurisdiction over the state claim was inappropriate. One of the stated reasons was that § 633(a) of the ADEA provides that the filing of a federal age discrimination lawsuit after the requisite periods for state and federal conciliation supersedes any state action in process. Basing its interpretation on the legislative history of the Act,

---

**16.** Plaintiff alleges violations of the N.J.Stat. Ann. 10:5–4, 5–12 and 5–38. See *infra* for further discussion of the State law claims.

the district judge found it "inappropriate" for a federal court to exercise pendent jurisdiction over state age discrimination claims.

> Congress clearly did not intend that state and federal actions would proceed simultaneously after the conciliation period, and to allow a state law cause of action, whether based on diversity or pendent jurisdiction, to proceed in federal court would be inconsistent with the Congressional intention that the federal remedy should take precedence.

*Id.* at 796.

On the other side of the spectrum, Judge Luongo, in *Wagner v. Sperry Univac, Div. of Sperry Rand Corp.*, 458 F.Supp. 505 (E.D. Pa.1978), found the appropriate inquiry was that of *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) as to whether "considerations of judicial economy convenience, and fairness to litigants militate in favor of exercising this discretionary jurisdiction." 458 F.Supp. at 518–19. Although the court declined to assume pendent jurisdiction in that case, it specifically rejected the rule set forth in *Pandis, supra*, which precluded the litigation of state age discrimination claims in federal court. *Id.* at 519 n.6. Judge Luongo stated that "section 14(a) may quite plausibly be read as applying only to actions brought in state court, rather than as applying to all actions based on state law. This ambiguity in the statutory language is not resolved by the legislative history of either the original Act or the 1978 Amendments." The court then stated that a better approach would be "to treat [a] (sic) case on its own merits" rather than finding all pendent state claims to be inappropriate for federal court disposition. *Id.*

■ The court adopts the view espoused by Judge Luongo in *Wagner, supra*. Utilizing the *Gibbs* rule, the court finds it would be in the interests of justice to assume pendent jurisdiction over the state age discrimination claims. No state court litigation has commenced. This case presents difficult factual issues compounded by its institution as a class action suit. It would,

therefore, be more economical, convenient, and fair to resolve all claims in a single proceeding.