Gerson ULLOA, et al.

v.

**CITY OF PHILADELPHIA, et al.**

**Joaquin LOPEZ, Jr.**

v.

**CITY OF PHILADELPHIA, et al.**

**Civ. A. Nos. 79–375, 79–1192.**

United States District Court,
E. D. Pennsylvania.

July 30, 1982.

Luis P. Diaz, Prather G. Randle, Latino Project, Philadelphia, Pa., for plaintiffs.

James M. Penny, Jr., Deputy City Sol., Philadelphia, Pa., for defendants.

MEMORANDUM and ORDER

SHAPIRO, District Judge.

These are employment discrimination actions concerning City of Philadelphia police

department hiring practices brought by two Puerto Rican Americans pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000–e *et seq.*, 42 U.S.C. § 1981 and § 1983, and the Fourteenth Amendment to the United States Constitution as well as state law. By Order dated May 22, 1981, these actions were consolidated for pretrial proceedings. Before the court is plaintiffs' motion for class certification pursuant to Fed.R.Civ.P. 23. For the reasons discussed below, this motion will be granted in part.

## CLASS DEFINITION

Plaintiffs allege that they passed the police department's written employment examination, administered on May 31, 1975, and the subsequent medical and psychiatric examinations, but that they were "denied employment on the basis of an adverse background investigation *alone*, the results of which are arbitrary and capricious." Complaints at ¶ 27. Their complaints allege a broad class:

... (a) all Hispanic persons who have applied for the position of Police Officer Patrolman, and have not been hired because of discriminating and illegal hiring practices which impact severely and disproportionately on Hispanic applicants including but not limited to the background investigation process; (b) all Hispanic police officers who have unsuccessfully sought promotion within the police department and have failed because of discriminatory and illegal promotional practices including but not limited to written promotional examinations ... and also on behalf of all others who might be or might have been adversely affected by discriminatory practices alleged in this complaint ....

Complaints at ¶ 11. However, their motion for certification is for the following proposed class:

All Hispanic persons who since February 1, 1973 have been rejected for the position of police officer in the Philadel-

phia Police Department for reasons other than the Department's written entrance examination; and all Hispanic persons who since February 1, 1973 have been unsuccessful in their attempts to apply or who have chosen not to apply because of knowledge of the Department's hiring practices.

Accordingly we exclude from our discussion, and from the class, persons who were allegedly denied employment because of the written entrance examination[1] and unsuccessful applicants for promotion.

■ Plaintiffs also seek to represent "all Hispanic persons who since February 1, 1973 have been unsuccessful in their attempts to apply for the position of police officer or who have chosen not to apply because of knowledge of the Department's hiring practices." Threatened injury can constitute injury-in-fact where the threat is so great that it discourages the threatened party from even attempting to exercise his or her rights. *Howard v. New Jersey Department of Civil Service*, 667 F.2d 1099, 1103 (3d Cir. 1980). In this case, the alleged threat of discrimination posed by the background investigation did not discourage plaintiffs from applying for the job. A subgroup of class members composed of persons who never applied is inappropriate because "... an attempt to identify those individuals who were chilled would be a burden on the court and require a large expenditure of valuable court time." *Simer v. Rios*, 661 F.2d 655, 669 (7th Cir. 1981); "Such a group is indefinable and unidentifiable." *Capaci v. Katz & Besthoff, Inc.*, 72 F.R.D. 71, 78 (E.D.La.1976). This subgroup will be excluded from the proposed class.

■ Plaintiffs use the word "Hispanic" with regard to the proposed class; plaintiffs defined Hispanic to mean "all persons of Puerto Rican, Mexican, Cuban, Central or South American, Philippine or other Spanish origin or culture, including but not limited to, people who are Spanish speaking or Spanish surnamed, but not including persons from Spain or Portugal." Plaintiffs'

1. Another case before this court attacks the use and application of this written examina-

tion. *Alvarez v. City of Philadelphia,* No. 77–4424 (E.D.Pa. commenced December 28, 1977).

Interrogatory Answer No. 7. Defendants contend that the police department does not recognize the term "Hispanic," but it employs "Spanish surnamed" to include all persons of Mexican, Puerto Rican, Cuban, Latin American or Spanish descent. Defendants' Interrogatory Answer No. 1. Defendants also represent that the race or national origin of police department job applicants is determined by self-designation. At oral argument, plaintiffs accepted defendants' definition for purposes of this action; further refinement of this definition may be appropriate if we reach the issue of remedies in view of the self-designated character of the class. For the present purpose, "Hispanic" is defined as all persons designating themselves to be of Mexican, Puerto Rican, Cuban, Latin American or Spanish descent. *See generally, Garcia v. Rush-Presbyterian-St. Lukes Medical Center*, 80 F.R.D. 254 (N.D.Ill.1978); *Black Grievance Committee v. Philadelphia Electric Co.*, 79 F.R.D. 98 (E.D.Pa.1978); *Jones v. Milwaukee County*, 68 F.R.D. 638 (E.D. Wis.1975); *Jones v. United Gas Improvement Corp.*, 68 F.R.D. 1 (E.D.Pa.1975); *United States v. Texas*, 342 F.Supp. 24 (E.D.Tex.1971); and *Lopez Tijerina v. Henry*, 48 F.R.D. 274 (D.N.M.1969), *appeal dismissed*, 398 U.S. 922, 90 S.Ct. 1718, 26 L.Ed.2d 86 (1970) (Douglas, J., dissenting).

## FILING LIMITATIONS

### A. *Title VII*

Section 706(e) of Title VII, 42 U.S.C. § 2000e–5(e), provides that a charge of discrimination must be filed with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged unlawful employment practice. The timeliness of an EEOC charge depends on when the alleged unlawful employment practice occurred and not the inevitable but neutral consequences of that practice. *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *Bronze Shields, Inc. v. New Jersey Department of Civil Service*, 667 F.2d 1074, 1083 (3d Cir. 1981). Where plaintiffs complained of the state's refusal to place them on a hiring roster, the 180-day period began to run on the date of notice of exclusion from the roster; the court rejected a "continuing violation" theory. *Id.* at 1084; *accord, Hood v. New Jersey Department of Civil Service*, 680 F.2d 955 (3d Cir. 1982).

Here plaintiffs knew they would not be hired when notified that they had "failed" their background investigations; the 180-day limitations period began to run then.[2] The record does not reveal when either the named plaintiffs or any member of the proposed class received such notice. We will assume that at least one of the named plaintiffs timely filed charges with the EEOC.[3]

A plaintiff may bring a class action on behalf of those who have not filed EEOC charges. *Green v. U. S. Steel Corp.*, 481 F.Supp. 295, 300 (E.D.Pa.1979). However,

---

**2.** The filing limits under Title VII are not jurisdictional and are subject to equitable tolling. *Bronze Shields, supra* at 1084. However, plaintiffs make no argument for equitable tolling and we find no reason to toll the filing limitation.

**3.** All class representatives need not meet the jurisdictional filing requirements of Title VII. *Gramby v. Westinghouse Electric Corp.*, 84 F.R.D. 655, 658 n.3 (E.D.Pa.1979). Ulloa and Lopez both allege timely filing. They received from the Department of Justice "right to sue" letters dated October 30, 1978 and December 29, 1978, respectively. By their answer and affirmative defense, which alleges untimely filing with respect to individual City officials but not the City of Philadelphia, defendants appear to concede timely filing as to the City.

Nor does defendant argue that plaintiffs failed to comply with 42 U.S.C. § 2000e–5(c) which requires commencement of proceedings with a state anti-discrimination agency, if one exists, and the subsequent expiration of sixty days before filing an EEOC charge. *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979). Such an agency exists in Pennsylvania. 43 Pa.Cons.Stat.Ann. § 951 *et seq.* Section 5(c) is satisfied if complainants brought their complaints to the EEOC and relied on it to refer charges to the appropriate state agency. *See, Mohasco Corp. v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980); *New York Gas Light Club, Inc. v. Carey*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980); and *Love v. Pullman*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972).

named plaintiffs cannot represent those persons who could not have timely filed EEOC charges at the time plaintiffs did so. *Wetzel v. Liberty Mutual Life Insurance Co.*, 508 F.2d 239, 246 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *see, Sussman v. Vornado*, 90 F.R.D. 680, 688 (D.N.J.1981). On the Title VII Count, the class must be limited to those applicants who received notice of their exclusion by reason of the background investigation no earlier than 180 days before a named plaintiff filed a charge of discrimination with the EEOC.

B. *42 U.S.C. § 1981*

 The statute of limitations on a § 1981 claim begins to run at the time of the alleged unlawful act. *Delaware State College, supra.* The § 1981 limitations period is ordinarily the most appropriate one under state law. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). It is not controlled by time limitations on an employee's right to sue in a Title VII case. *Hackett v. McGuire Bros.*, 445 F.2d 442, 444 n.1 (3d Cir. 1971). Selection of the appropriate Pennsylvania statute of limitation requires consideration of the nature of the federal claim and the operation of the various Pennsylvania limitations statutes. *Davis v. U. S. Steel Supply*, 581 F.2d 335 (3d Cir. 1978); *Meyers v. Pennypack Woods Home Ownership Association*, 559 F.2d 894 (3d Cir. 1977).

 Plaintiffs complain that they were the victims of discrimination in the department's hiring process. These allegations are best analogized to torts involving the wrongful interference with another's economic rights and interests.[4] *See, Davis, supra* (racial harassment on job and dis-

criminatory discharge); *Meyers, supra* (discriminatory refusal to sell house).

Under Pennsylvania law in effect prior to June 27, 1978, the trespass or contract limitations period of six years (12 Pa.Cons.Stat. § 31) was held more appropriate in employment discrimination actions than the two-year limitation in actions involving personal injury (12 Pa.Cons.Stat. § 34). *Davis, supra; Meyers, supra; Alston v. Allegheny Ludlum Steel Corp.*, 465 F.Supp. 171 (W.D. Pa.1978), *aff'd mem.*, 594 F.2d 854 (3d Cir.), *cert. denied*, 442 U.S. 943, 99 S.Ct. 2886, 61 L.Ed.2d 313 (1979) (discriminatory promotional practices). In *Grim v. CNA Financial Corporation*, 8 Pa.D. & C.3d 447 (1978), the court held a six-year period appropriate in employment discrimination actions brought under the *state* Human Relations Act.[5]

 These actions were instituted in 1979, so they are subject to the Pennsylvania limitations laws effective June 27, 1978. 42 Pa.Cons.Stat.Ann. § 5521 *et seq.* Actions for economic torts are now subject to a six-year limitation period. *See*, 42 Pa. Cons.Stat.Ann. § 5527(6); *accord, Al-Khazraji v. Saint Francis College*, 523 F.Supp. 386, 389–391 (W.D.Pa.1981). Ulloa's action was filed on January 29, 1979; claims arising no more than six years before that date, not having been barred when this action commenced, may appropriately be included in the § 1981 class action. This is also the limitation period for plaintiffs' claims pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983. *See, Chardon v. Fernandez*, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981) (*per curiam*); *Polite v. Diehl*, 507 F.2d 119 (3d Cir. 1974) (*en banc*).

### FEDERAL RULE OF CIVIL PROCEDURE 23(a)

 Rule 23(a) provides:

file suit after receiving notification from the Human Relations Commission of its dismissal of the complaint or its failure to obtain a conciliation agreement. 43 Pa.Cons.Stat.Ann. § 962(c); *see, Davis, supra* at 338; *Al-Khazraji v. Saint Francis College*, 523 F.Supp. 386, 390 n.9 (W.D.Pa.1981); *Beamon v. W. B. Saunders Co.*, 413 F.Supp. 1167, 1174–75 (E.D.Pa.1976).

---

4. Discriminatory employment *discharges* more nearly sound in contract. *Liotta v. National Forge Co.*, 629 F.2d 903, 906 (3d Cir. 1980). Under prior Pennsylvania law, the limitations period for actions in trespass or contract was the same, six years. *See, infra.*

5. The Pennsylvania Human Relations Act, 43 Pa.Cons.Stat.Ann. § 951 *et seq.*, does not specify a limitation period in which a plaintiff must

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The prerequisites of 23(a) are mandatory. *Alexander v. Gino's, Inc.*, 621 F.2d 71, 74 (3d Cir.) (*per curiam*), *cert. denied*, 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980).

### NUMEROSITY

Plaintiffs allege that over 150 Hispanics passed the May, 1975 employment examination but were not hired as a result of screening procedures including, but not limited to, the background investigation. It is further alleged that 88 other Hispanics may be denied employment on the basis of the screening procedures.

 The numerosity test is one of practicability of joinder. Impracticability is a subjective determination based on number, expediency and inconvenience of trying individual suits. *Piel v. National Semiconductor Corp.*, 86 F.R.D. 357, 365 (E.D.Pa. 1980); 7 Wright and Miller, Federal Practice and Procedure § 1762 (1972). Even though plaintiffs' figures include persons rejected for reasons other than the background investigation, we are satisfied, at this stage of the litigation, that those persons who have already failed the background investigation are sufficient in number so that their joinder is impracticable.

### COMMON QUESTIONS

 We find commonality on the issue of the background investigation. The validity of this practice necessarily raises common questions of law and fact. Defendants contend that background investigations are highly individualized and markedly different fact patterns preclude certification. *See, Mays v. Scranton City*, 87 F.R.D. 310, 314–316 (M.D.Pa.1979). However, this case differs from *Alexander v. Gino's, Inc.*, 621 F.2d 71 (3d Cir.) (*per curiam*), *cert. denied*, 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980), an employment discrimination action in which the court upheld the district court's determination to deny certification on commonality grounds. There the named plaintiff alleged a discriminatory discharge but resigned in connection with missing funds; of three proposed class member witnesses, two had resigned for personal reasons and one was discharged for unsatisfactory performance. *Id.* at 74. In this case, a departmental policy common to all class members to use the background investigation for arbitrary and discriminatory determinations with regard to every class member is alleged; departmental misuse of a background investigation is an issue of fact and law common to all members of the class.

However, plaintiffs seek to represent Hispanics who have been denied jobs "for reasons other than the Department's written entrance examination." This would include written, psychiatric and medical examinations which plaintiffs have passed; they allege denial of appointment only because of the background investigation.[6] The use of background investigations to screen applicants concerns various individualized situations in which the opportunity for subtle and subjective differentiation is present. It raises a complicated factual setting independent of that surrounding psychiatric and medical examinations. We have considered the across-the-board analysis of standing and commonality sometimes invoked in Title VII cases, *see generally, East Texas Motor Freight, Inc. v. Rodriguez*, 431 U.S.

---

**6.** In an individual suit, plaintiffs in this case would have no standing to contest the legality of other selection procedures because they have been denied employment on the basis of the background investigation alone. There is no causal connection between their loss of a job opportunity and selection procedures other than the background investigation; they have suffered no injury in fact from screening procedures other than the background investigation. *See, Howard, supra* at 1101; *Bronze Shields, supra* at 1080 n.12.

395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977); *Scott v. University of Delaware*, 601 F.2d 76, 85 n.19 (3d Cir.), *cert. denied*, 444 U.S. 93, 100 S.Ct. 275, 62 L.Ed.2d 189 (1979); *Bartelson v. Dean Witter & Co.*, 86 F.R.D. 657 (E.D.Pa.1980), but background investigations as compared with medical and psychiatric examinations raise distinct issues of law and fact. We decline to certify plaintiffs to represent those applicants who were denied employment for reasons other than the background investigation.

## TYPICALITY

Plaintiffs allege a common fact pattern in connection with the class and seek the same remedies on the basis of the same legal theories. The named plaintiffs' claims are not based on unique circumstances or legal theories which will receive disproportionate emphasis compared with those of the proposed class as limited above. *See*, 7 Wright and Miller, Federal Practice and Procedure § 1764 (1972); *Alexander, supra*. Where interests coincide, typicality is satisfied. *Scott, supra* at 85; *see, Bartelson, supra* at 667–673.

## FAIR AND ADEQUATE REPRESENTATION

Plaintiffs have no interests antagonistic to those of the class and plaintiffs' attorney is capable. *Wetzel, supra* at 247. Defendant raises no objection, and we are satisfied that plaintiffs can adequately represent the class as defined.

## FEDERAL RULE OF CIVIL PROCEDURE 23(b)(2)

Plaintiffs seek certification pursuant to Fed.R.Civ.P. 23(b)(2):

the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. . . .

Plaintiffs' allegations, if proved, are actionable for reasons applicable to the entire class. An equitable remedy directed at such practices would benefit the entire class. No intra-class conflict of interest is apparent. This Title VII action is "particularly fit for (b)(2) treatment." *Wetzel, supra* at 250.

Accordingly, we shall certify the following sub-classes:

*Count I (Title VII)* :

All persons of Mexican, Puerto Rican, Cuban, Latin American or Spanish descent who have been rejected for the position of Philadelphia police officer because of the background investigation and who received notice of their rejection no earlier than 180 days before a named plaintiff filed a charge of employment discrimination by defendants with the EEOC.

*Counts II, III and IV (42 U.S.C. §§ 1981, 1983 and Fourteenth Amendment)* :

All persons of Mexican, Puerto Rican, Cuban, Latin American or Spanish descent who no earlier than February 1, 1973, have been rejected for the position of Philadelphia police officer because of the background investigation.

This certification is conditional pending further discovery regarding the nature of plaintiffs' claims and the composition of the class as defined. *See*, Fed.R.Civ.P. 23(c)(1).