**Alfred F. HARTER, Plaintiff,**

v.

**GAF CORPORATION, Defendant.**

Civ. A. No. 88–4052 (AJL).

United States District Court,
D. New Jersey.

July 28, 1993.

John A. Craner, Craner, Nelson, Satkin & Scheer, P.A., Scotch Plains, NJ, for plaintiff.

Francis X. Dee, Patrick G. Brady, Carpenter, Bennett & Morrissey, Newark, NJ, for defendant.

## OPINION

LECHNER, District Judge.

This is an action brought by Alfred F. Harter ("Harter") against GAF Corporation ("GAF") for wrongful termination under the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. §§ 621 *et seq.* Jurisdiction is alleged pursuant to 29 U.S.C. § 626(c) and appears to be appropriate.

Currently before the court is the motion of Harter for an order to set aside the order of Magistrate Judge Dennis M. Cavanaugh ("Judge Cavanaugh"), filed 28 May 1993 (the "28 May 1993 Cavanaugh Order"), which denied Harter's motion to amend his complaint (the "Complaint"), filed 20 September 1988.[1] For the reasons which follow, Harter's objections are overruled, the 28 May 1993 Cavanaugh Order is affirmed and the motion to amend is denied.

*Facts*[2]

Harter was born on 14 February 1923. Complaint, ¶ 5. Harter began working for GAF on or about 1 August 1947. *Id.,* ¶ 3. During his employment with GAF, Harter was assigned to various departments, including the Engineering Department. While in

---

1. In support of its motion, Harter has submitted the following: Brief on Behalf of Plaintiff in Support of Objections to the Order of the Magistrate Judge Denying Leave to Plaintiff to Amend His Complaint to Assert Pendent Causes of Action (the "Moving Brief").

In opposition to the motion of Harter, GAF has submitted the following: Defendant's Brief in Opposition to Plaintiff's Objections to the Order of the Magistrate Judge Denying Leave To Plaintiff to Amend His Complaint to Assert Pendent Causes of Action (the "Opp. Brief"); Affidavit of Patrick G. Brady.

2. The facts are fully set forth in the Letter–Opinion and Order, filed 27 November 1990 (the "27 Nov. 1990 Decision") and in the Letter–Opinion and Order, filed 20 August 1991 (the "20 Aug. 1991 Decision"). As noted in the 27 Nov. 1990 Decision, the facts were taken largely from the submissions of GAF because Harter did not offer a statement of facts in any of his submissions. *See id.* at 7 n. 4.

the Engineering Department, Harter held a number of different positions, including Manager of Engineering Products. *See* 20 Aug. 1991 Dec. at 3.

In early 1983, the Engineering Department was reorganized and the staff was reduced. *See id.* at 4. The reorganization was attributed to reduced capital spending by GAF. *Id.* The reduction in staff was supervised by Charles Barbaz ("Barbaz"), the Director of Corporate Engineering, who reported to Abraham Lindenauer ("Lindenauer"), then the Vice President of Technical Services. *Id.* The jobs of Harter and approximately five other engineering staff members were eliminated. *Id.* Harter was given one year's severance pay which was to be continued even if Harter was able to secure other employment during the severance period. *Id.* Harter executed a release of any and all claims of age discrimination in return for the above severance package. *Id.*

Sometime in 1984, the Engineering Department was divided into separate departments to serve the Chemical Division and the Building Materials Division. *Id.* Barbaz was named the Director of the Engineering Department of the Chemicals Division. *Id.* At or about this time, new management at GAF began to increase capital expenditures. *Id.* As a result, several capital projects were short-staffed. *Id.* One of these projects involved the possible expansion of a GAF facility located in Calvert City, Kentucky. *Id.*

Barbaz, at this time, discussed with management about rehiring Harter because of his familiarity with the Calvert City facility. *Id.* at 4–5. Barbaz also met with Harter. *Id.* at 5. Barbaz proposed to Harter that he would be re-employed in the Engineering Department in his former title of Manager of Engineering Projects at an annual salary of $60,000. *Id.* Barbaz further informed Harter the position was subject to elimination pursuant to the staffing requirements of the Engineering Department. *Id.* Harter was formally offered the position in a letter, dated 24 May 1984. *Id.* In the letter, Harter was advised again that:

> This position is available at this time based upon [GAF's] current workload in the Engineering Department; however should

engineering requirements necessitate a reduction in staff, your position may be subject to elimination.

*Id.* Harter was also advised in the letter that, by accepting the position, he would waive all rights to sue GAF or bring any cause of action against it because of that layoff or termination. *Id.*

Subsequently, Harter accepted the new position. *Id.* Barbaz assigned Harter to a number of projects in late 1984 and 1985, including review of the expansion of the Calvert City facility. *Id.* In 1985, Harter was assigned responsibility for a new project at a GAF facility located in Linden, New Jersey. *Id.*

In or about the summer of 1985, Lindenauer assumed responsibility for the Engineering Department. *Id.* Barbaz reported directly to Lindenauer. *Id.* at 5–6. Soon thereafter, Lindenauer and Barbaz decided to implement a plan they had discussed when Barbaz first joined GAF in 1982. *Id.* at 6. Under the plan, GAF would develop in-house the capability to prepare certain engineering design work which traditionally had been contracted out to firms and construction companies. *Id.* The goal of the plan was to have the Engineering Department handle virtually all engineering design work. *Id.*

Accordingly, Barbaz conducted a review of the staff in the Engineering Department. *Id.* Barbaz concluded the Engineering Department did not have a staff capable of preparing the detailed design engineering work contemplated under the restructuring plan. *Id.* As a result, certain positions which did not involve specialized engineering skills were to be eliminated. *Id.* Positions to be eliminated were primarily managerial in nature and involved acting as a liaison between outside firms and the Engineering Department. *Id.*

The Manager of Engineering Projects position held by Harter was a managerial, nontechnical position. *Id.* Nevertheless, the Manager of Engineering Projects position was to be retained. *Id.* The liaison aspects of the position, however, would be diminished and the restructured job would require a greater knowledge of and involvement in de-

tail design engineering. *Id.* Barbaz concluded Harter lacked the skills needed for the new Manager of Engineering Projects position as envisioned in the restructured department. *Id.* at 6–7. Barbaz also concluded Harter would not be suitable for any other position in the reorganized department. *Id.* at 7.

Reorganization of the Engineering Department formally began in January of 1986. *Id.* Harter was terminated by GAF on or about 15 January 1986. *Id.* He was sixty-three years of age at that time.[3] *Id.* Following his discharge, Harter filed a Verified Complaint with the New Jersey Division on Civil Rights ("DCR") on or about 7 March 1986 (the "Verified DCR Complaint"). *Id.*

In the Verified DCR Complaint, Harter stated he was discharged from GAF because of his age, in violation of N.J.S.A. 10:5–4, 10:5–4.1 and 10:5–12(a) of the New Jersey Law Against Discrimination (the "NJLAD"). *Id.* Moreover, on 7 March 1986, Harter filed a charge of discrimination (the "Charge") with the DCR using an Equal Employment Opportunity Commission (the "EEOC") form. *Id.* The allegations and claims asserted in the Verified DCR Complaint and in the Charge were identical in substance. *Id.* Harter checked a box on the Charge which stated: "I also want this charge filed with the EEOC." *Id.* The DCR, on behalf of Harter, filed a copy of the Charge with the EEOC alleging a violation of the ADEA. *Id.*

The EEOC notified Harter that its investigation of the alleged ADEA violation would be deferred pending the outcome of state proceedings. *Id.* at 8. On 24 April 1986, the DCR notified the parties it would conduct an investigation with respect to Harter's state law claims. *Id.* Two fact finding conferences were conducted on 5 August 1986 and 5 May 1987 in connection with the DCR investigation (collectively, the "Conferences"). *Id.* Both Harter and GAF were represented by counsel at the Conferences. *Id.* Barbaz was also present at the Confer-

ences. *Id.* The Conferences were conducted by Veronica M. Porter ("Porter"), an investigator with the DCR. *Id.* At the Conferences, Harter and his counsel presented evidence and responded to GAF's evidence. *Id.* The DCR investigator and counsel for Harter questioned GAF's witness, Barbaz. *Id.*

After further discovery and investigation, on or about 22 September 1988, the DCR issued a finding of no probable cause for Harter's state law claims filed under the NJLAD.[4] The DCR finding stated that, based upon their review: "[It] did not find sufficient facts to credit the allegations of the complaint against [GAF]." *Id.* at 8–9. The DCR informed Harter and counsel: "If you feel that [the finding of no probable cause is] in error, you are required to file an appeal with the Superior Court of New Jersey, Appellate Division within 45 days." *Id.* at 9; *see also* N.J.S.A. 10:5–21. No appeal was taken. 20 Aug. 1991 Decision at 9.

On or about 25 October 1988, Harter and GAF were advised by the EEOC that it too would not further process Harter's ADEA claim. *Id.* The EEOC stated:

> The State Agency has concluded its processing of this charge and the EEOC ha[s] reviewed the final findings. Based on this review, the EEOC will discontinue its processing of this charge.

*Id.*

### Procedural History

In November 1990, GAF moved for summary judgment pursuant to Fed.R.Civ.P. 56 on the grounds of issue and claim preclusion. *See* 20 Aug. 1991 Decision at 1. GAF also moved for summary judgment on the ground Harter's claims were time-barred. *Id.* The 27 Nov. 1990 Decision granted summary judgment to GAF on the grounds of claim preclusion. *Id.* at 2; *see also* 27 Nov. 1990 Dec. at 15–52. The statute of limitations question was not reached. *See* 27 Nov. 1990 Dec. at 52 n. 11.

---

3. At the time of reorganization, of the fourteen employees who remained with the Engineering Department, eleven were forty years of age or older. Of these eleven, nine were over the age of fifty. 27 Nov. 1990 Decision at 12.

4. Two days before the DCR finding of no probable cause, on 20 September 1988, Harter filed this action alleging violations of the ADEA. *See* Complaint.

Harter subsequently appealed the 27 Nov. 1990 Decision to the United States Court of Appeals for the Third Circuit. On 5 July 1991, the Third Circuit filed an opinion (the "5 July 1991 Circuit Opinion") which vacated the 27 Nov. 1990 Decision. *See Harter v. GAF Corp.*, 941 F.2d 1201 (3d Cir.1991) [Table]. The Third Circuit held that a judicially unreviewed state administrative determination has no preclusive effect in a Federal court age discrimination suit. 5 July 1991 Circuit Opinion at 1. The Third Circuit based its ruling on *Astoria Federal Sav. & Loan Ass'n v. Solimino*, —— U.S. ——, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991), a case decided by the Supreme Court after the 27 Nov. 1990 Decision was filed. *See* 5 July 1991 Circuit Opinion at 3.

The Third Circuit noted that, although Harter sought a determination on appeal of the statute of limitations issue, there was no occasion to consider the issue because it was not reached on the summary judgment motion. *See* 5 July 1991 Circuit Opinion at 3 n. 2. The Third Circuit remanded the case for consideration of the statute of limitations issue presented but not reached on GAF's summary judgment motion. *Id.* at 3.

■ In the 20 Aug. 1991 Decision, it was determined that Harter's ADEA claim was barred by the two-year statute of limitations applicable to such claims.[5] It was also determined in the 20 Aug. 1993 Decision that (1) the two-year statute of limitations was neither tolled pursuant to 29 U.S.C. § 626(e)(2), *see* 20 Aug. 1991 Decision at 14–15, nor extended pursuant to the Age Discrimination Claims Assistance Act of 1988 (the "Claims Assistance Act"), 29 U.S.C. § 626(e),[6] *see* 20 Aug. 1991 Decision at 15–26, and that (2) the

three-year statute of limitations set forth in 29 U.S.C. § 255(a) did not apply because there was no evidence of a willful violation of the ADEA by GAF with regard to Harter's termination, *see* 20 Aug. 1991 Decision at 26–29.

In June 1992, the Third Circuit affirmed the 20 Aug. 1991 Decision insofar as that decision determined that Harter had "failed utterly in his burden to show evidence from which a jury could conclude that GAF acted willfully." *Harter v. GAF Corp.*, 967 F.2d 846, 852 (3d Cir.1992). The Third Circuit upheld "that portion of the [20 Aug. 1991 Decision] that dismisses Harter's claim for a willful violation of the ADEA and dismisses his claim for liquidated damages." *Id.* Nevertheless, the Circuit also reversed the 20 Aug. 1991 Decision in part, finding that the Claims Assistance Act extended the time within which Harter could file his ADEA claim. *Id.* at 848–51.

Harter has moved—four and one half years after this action was commenced and three years after the close of discovery[7]—to amend the Complaint to add two additional claims: (1) A claim based upon the NJLAD, 10:5–1 *et seq.* and (2) a claim based upon the New Jersey State Constitution, Article 1, Paragraph 1. *See* Moving Brief at 1. According to Harter, he seeks to assert these state claims because, if he prevails on his cause of Federal ADEA action, "he will be entitled to damages which would not otherwise be available under the ADEA." *Id.* at 4. The motion to amend was denied by Judge Cavanaugh on 28 May 1993. *See* 28 May 1993 Cavanaugh Order.

---

**5.** The ADEA incorporates by reference the statute of limitations provided in the Portal–to–Portal Act of 1947, 29 U.S.C. § 255. *See* 29 U.S.C. § 626(e)(1). Therefore, an action under the ADEA for age discrimination must be "commenced within two years after the cause of action accrued, except that a cause of action arising out of a *willful violation* may be commenced within three years after the cause of action accrued...." 29 U.S.C. § 255(a) (emphasis added). The limitations period commences running when an employee is notified of the employment action on which suit is brought. *See Delaware State College v. Ricks*, 449 U.S. 250, 259, 101 S.Ct. 498, 504–05, 66 L.Ed.2d 431 (1980). As

discussed in the 20 Aug. 1991 Decision, Harter conceded his ADEA claims were filed more than two years after notification of his termination. *See id.* at 9–10, 14.

**6.** The Claims Assistance Act extends the two-year statute of limitations for certain claims for which the limitations period has expired. *See* 29 U.S.C. § 626(e).

**7.** Discovery in this matter closed on or about 31 March 1990. *See* Order of Magistrate Judge Ronald J. Hedges, filed 21 February 1990, at 1.

*Discussion*

### A. Standard of Review of Decision by Judge Cavanaugh

Harter now appeals the 28 May 1993 Cavanaugh Order denying his motion to amend the Complaint. He argues that the 28 May 1993 Cavanaugh Order is clearly erroneous and contrary to law.

Pursuant to 28 U.S.C. § 636(b)(1), Rule 72 of the Federal Rules of Civil Procedure and Rule 40 A of the General Rules of the District Court for the District of New Jersey, a United States Magistrate Judge may hear "dispositive" and "nondispositive" motions assigned by the district court.

▮▮▮ With regard to nondispositive motions, "the district court may modify the magistrate [judge's] order only if the district court finds that the magistrate [judge's] ruling was clearly erroneous or contrary to law." *Gomez v. United States*, 490 U.S. 858, 868, 109 S.Ct. 2237, 2244, 104 L.Ed.2d 923 (1989); *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 91 (3d Cir.1992); *see also* 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a). Upon review by a district court of a nondispositive decision, the magistrate judge is accorded wide discretion. *National Labor Relations Bd. v. Frazier*, 966 F.2d 812, 815 (3d Cir. 1992); *Hanntz v. Shiley, Inc. Div. of Pfizer, Inc.*, 766 F.Supp. 258, 262 (D.N.J.1991); *Republic of Philippines v. Westinghouse Electric Corp.*, 132 F.R.D. 384, 387 (D.N.J.1990); *Dome Petroleum, Ltd. v. Employers Mut. Liability Ins. Co.*, 131 F.R.D. 63, 65 (D.N.J. 1990); *Schroeder v. Boeing Commercial Airplane Co., Div. of Boeing Corp.*, 123 F.R.D. 166, 169 (D.N.J.1988). With respect to dispositive motions the district court must make a *de novo* determination of those portions of the magistrate judge's report to which a litigant has filed an objection. *Gomez*, 490 U.S. at 868, 109 S.Ct. at 2243–44; *Haines*, 975 F.2d at 91; 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 72(a); General Rule 40(D)(5).

In this case, the 28 May 1993 Cavanaugh Order concerned a nondispositive motion; accordingly, it may be modified only if Judge Cavanaugh's decision is either clearly erroneous or contrary to law.

### B. Standard of Review of Motion to Amend the Complaint

Federal Rule of Civil Procedure 15(a) provides that a plaintiff may, as a matter of right, amend the complaint one time before a responsive pleading is served.[8] *See* Fed. R.Civ.P. 15(a). After the complaint has been amended once or after a responsive pleading has been served, however, a party may amend the complaint only upon leave of the court or written consent of the adverse party. *See id.*

Leave to amend, as embodied in Rule 15, is not without limitation; indeed, "the Supreme Court has delineated factors which weigh against amendment." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486–87 (3d Cir.1990). These factors include:

> undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment.

*Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). The decision to grant or deny a movant's request to amend is within the discretion of the district court; however, the court must state the reasons justifying its decision. *Id.; Coventry v. United States Steel Corp.*, 856 F.2d 514, 519 (3d Cir.1988); *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir.1984).

As discussed below, Judge Cavanaugh denied leave to Harter to amend the Complaint on three grounds which more than sufficiently demonstrate that the 28 May 1993 Cava-

---

**8.** Rule 15(a) provides, in pertinent part:

A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Fed.R.Civ.Pro. 15(a).

naugh Order was neither clearly erroneous nor contrary to law.

### 1. *Delay in Filing Motion to Amend*

 The Third Circuit has held that delay alone is insufficient for denial of a motion to amend. *Coventry,* 856 F.2d at 520 (citing *Cornell & Co. v. Occupational Safety & Health Review Comm'n,* 573 F.2d 820 (3d Cir.1978)). "Rather, the touchstone is whether the non-moving party will be prejudiced if the amendment is allowed." *Id.* (citing *Cornell,* 573 F.2d at 823). Prejudice involves the serious impairment of the defendant's ability to present its case. *Dole,* 921 F.2d at 488.

The Third Circuit has recognized that a motion to amend a complaint may be properly denied as unduly prejudicial to the defendants when it is made on the eve of trial or after the close of discovery. *See, e.g., Gay v. Petsock,* 917 F.2d 768, 772 (3d Cir.1990) (denying motion to add additional claims made on first day of trial); *Berger v. Edgewater Steel Co.,* 911 F.2d 911, 923–24 (3d Cir.) (denying motion to add additional claims made four months after new information became available and two months after close of extended discovery), *cert. denied,* 499 U.S. 920, 111 S.Ct. 1310, 113 L.Ed.2d 244 (1990); *Clark v. Falls,* 890 F.2d 611, 624 (3d Cir. 1989) (denying motion to include events occurring after filing of complaint because motion made one week after close of discovery and three weeks before trial); *Averbach v.*

*Rival Mfg. Co.,* 879 F.2d 1196, 1202 (3d Cir.1989) (denying motion to add additional claim made four days before close of discovery and one month before trial which would unduly prejudice defendant on eve of trial), *cert. denied,* 493 U.S. 1023, 110 S.Ct. 726, 107 L.Ed.2d 745 (1990).

As an initial ground for denying leave to amend the Complaint, Judge Cavanaugh determined that "allowing [Harter] to file an amended complaint three years after discovery has closed would unduly delay the final disposition of the case and, thereby, unfairly disadvantage [GAF]." 28 May 1993 Cavanaugh Order at 3. In this regard, Judge Cavanaugh's determination was neither clearly erroneous nor contrary to law. *Gomez,* 490 U.S. at 868, 109 S.Ct. at 2243–44; *Haines,* 975 F.2d at 91.

 Harter seeks to amend the Complaint for the purposes of alleging grounds for relief which, he alleges, may entitle him to compensatory damages or punitive damages or both.[9] As mentioned, amendment is sought four and one half years after the filing of the Complaint and three years after the close of discovery in this case. Leave to amend is sought despite the facts that (1) these claims could have been made when the Complaint was filed and (2) Harter has not explained in his submissions why he delayed for such a significant length of time in seeking to add these claims.[10]

9. Under the ADEA, the sole basis for relief currently stated in the Complaint, a party can only recover damages in the form of lost earnings. *Rogers v. Exxon Research & Engineering Corp.,* 550 F.2d 834, 840–42 (3d Cir.1977) (finding compensatory damages for pain and suffering not available under ADEA), *cert. denied,* 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978).

10. Harter neither alleges nor does it appear that any new information or evidence has come to his attention to justify such an untimely attempt to amend the Complaint. Indeed, in arguing a separate point, Harter essentially concedes that the claims now sought to be added could, and logically should, have been part of the Complaint, as originally filed. Harter states:

Federal courts assert pendent jurisdiction over a state claim when a substantial [F]ederal claim is present and the state and [F]ederal claims derive "from a common nucleus of op-

erative fact" such that a plaintiff would be expected to try them all in one proceeding....

[T]he facts essential to establish violations of the [NJ]LAD and the New Jersey Constitution *are identical* to those necessary to establish a violation of the ADEA. Moreover, the [NJ]LAD and the New Jersey Constitution utilize the same analytical framework that is applied under the ADEA in determining whether the conduct of an employer constitutes unlawful age discrimination. [Harter], therefore, *would be expected to try both the state and [F]ederal age discrimination claims in the same proceeding.*

Moving Brief at 6–7 (emphasis added) (citations omitted). In light of this unwitting concession, Harter's failure to explain (1) why the state law claims now sought to be added were not contained in the Complaint, as originally filed, or (2) why leave to amend was not sought earlier than *four years* after the Complaint was filed, is significant.

Allowing Harter to amend the Complaint at such a late stage will prejudice GAF and further prolong this already drawn-out litigation. Despite discovery having been closed for three years, Harter's proposed amended claims for damages will require the re-opening of discovery and will require GAF to expend additional time and resources for the purposes of determining, *inter alia*, whether and to what extent Harter may have suffered damages from the GAF conduct of which he complains. At the very least, as Harter concedes, *see* Moving Brief at 8, GAF would be required to *re-take* Harter's deposition. *See Ohio–Sealy Mattress Mfg. Co. v. Kaplan*, 90 F.R.D. 40, 44 (N.D.Ill.1981) (amendment of damages claims denied as unjust to defendant when plaintiff unduly delayed alleging damages for known conduct and such claims would require additional discovery); *Marson v. Jones & Laughlin Steel Corp.*, 87 F.R.D. 151, 152 (E.D.Wis.1980) (amendment of damages claim denied as unduly prejudicial to defendant when plaintiff delayed said claim until four years after filing complaint).[11] Accordingly, this portion of the 28 May 1993 Cavanaugh Order is affirmed and Harter's objections thereto are rejected.[12]

### 2. *Futility of Amendment*

■ The Supreme Court has indicated that "futility of amendment" is a factor to be considered in determining whether a plaintiff should be granted leave to amend a complaint. *See Foman*, 371 U.S. at 182, 83 S.Ct. at 230; *see also Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988) (upholding denial of amendment when amendment would be futile). Amendment of the complaint is futile if the amendment will not cure a deficiency in the original complaint or if the amended complaint cannot withstand a motion to dismiss. *Jablonski*, 863 F.2d at 292 (citing *Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir.), *cert. denied*, 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983)).

■ In the 28 May 1993 Cavanaugh Order, Judge Cavanaugh held:

> [Harter]'s complaint under the ADEA sought liquidated damages, the ADEA version of punitive damages.... This aspect of the case is relevant with regard to [Harter]'s motion to amend because [Harter]'s attorney has stated on the record during oral argument ... and has made clear in his moving papers that the reason he is seeking to amend to add state claims is to enable him to seek compensatory *and punitive damages*. Liquidated damages under the ADEA are the functional equivalent of punitive damages under New Jersey law. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 125 [105 S.Ct. 613, 623–24, 83 L.Ed.2d 523] (1985)....
>
> [T]he Court finds merit in [GAF]'s argument that to allow [Harter] to amend the complaint would be an exercise in futility given the fact that [Harter] was unable to support the less onerous burden under ADEA regarding the liquidated damages aspect of his [C]omplaint. Since the District Court and the Third Circuit have determined that [Harter] did not adequately sustain his burden of showing that [GAF] willfully violated the ADEA, it is highly unlikely that [Harter] will be able to

---

11. Harter argues:

> [A]s far as undue delay is concerned, that is an unfair and unsupported conclusion. The reference to three years since discovery closed is also an unfair reference in and of itself. Much of the intervening years since this suit was instituted have been spent on two appeals. Moreover, there is no asserted prejudice if the amendment were permitted.... [Harter] does not seek additional discovery nor offer additional witnesses in support of the amended complaint. [GAF], if desired, could easily and swiftly depose [Harter] once again, certainly not the type of stuff to cause "undue delay" or "disadvantage" [GAF].

Moving Brief at 7–8. These arguments are unsupported and without merit. First, with regard to the three years since the close of discovery, it is irrelevant how this time was spent, given that these claims for damages were available to Harter from the beginning and leave to amend could have been sought in a timely fashion. Second, with regard to prejudice to GAF, whether Harter intends to offer new evidence or requires additional discovery to prove his claims has little, if any, bearing on what GAF must do to defend itself *against* Harter's newly proposed claims. Indeed, as Harter recognizes, *see* Moving Brief at 8, GAF will, at least, have to re-depose Harter.

12. Although the additional two bases for the 28 May 1993 Cavanaugh Order are discussed below, the undue delay in bringing the motion to amend, with the resulting prejudice to GAF, is sufficient, standing alone, to deny the motion.

sustain the burden required under New Jersey law of showing an "evil-minded act," which is necessary to be awarded punitive damages in New Jersey. *See Nappe v. Anschelewitz, Barr, Ansell & Bonello,* 97 N.J. 37, 49 [477 A.2d 1224] (1984).

28 May 1993 Cavanaugh Order at 3–4 (emphasis added).

In objecting to the 28 May 1993 Cavanaugh Order, Harter argues Judge Cavanaugh "improperly placed the emphasis on the damages aspects of the asserted pendent claims, noting that the asserted damages under state law are but an *alter ego* for the ADEA's liquidated damage reference (which is barred in the case *sub judice* )." Moving Brief at 7. According to Harter:

> The [Third Circuit] never addressed the issue of damages under state law. The [Third Circuit] held that under the definition of "willful" ... [Harter] had failed in his burden of proof to *prima facie* show that [GAF] willfully violated the ADEA. The Court *never* said that liquidated damages were the equivalent of punitive damages or made any reference to exemplary or any other damages which might be recoverable under state common law, no less to preclude them as a matter of law.... [Moreover], the issue of whether or not [Harter] was precluded, as a matter of fact and law, from obtaining *liquidated damages* under the ADEA was never before th[e district] court nor addressed by it. Rather, the [district] court addressed the issue of whether [Harter]'s termination was the result of willful age discrimination "... such that the three year statute of limitations would apply."

Moving Brief at 9–10 (emphasis in original).

These arguments are unpersuasive. As an initial matter, there is no basis for Harter's contention that Judge Cavanaugh "improperly" emphasized the damages aspects of Harter's proposed state law claims. As is apparent from the 28 May 1993 Cavanaugh Order, it is Harter who repeatedly emphasized that the purpose of adding these claims was to obtain damages not obtainable under the ADEA. 28 May 1993 Cavanaugh Order at 3–4. Indeed, in Harter's Moving Brief objecting to the 28 May 1993 Cavanaugh Order, Harter *again* states: "As previously noted, the *benefit* of including claims under the [NJ]LAD and the New Jersey Constitution deal with the *enhanced damages obtainable under state law.*" Moving Brief at 7 n. 6 (citing *Promisel v. First Am. Artificial Flowers, Inc.,* 943 F.2d 251 (2d Cir.1991) (emphasis added), *cert. denied,* — U.S. ——, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992)).

Harter's contention that neither this court nor the Circuit ever addressed the issue of liquidated damages recoverable under the ADEA is also without merit. As the 20 Aug. 1991 Decision recognized, and as the Circuit affirmed, liquidated damages are only recoverable under the ADEA upon a finding of willfulness. *See* 20 Aug. 1991 Decision at 26–27; *Harter,* 967 F.2d at 851; *see also* 29 U.S.C. § 626(b). Accordingly, because the Circuit recognized that "[t]he district court was correct that Harter failed utterly in his burden to show evidence from which a jury could conclude that GAF acted willfully," *Harter,* 967 F.2d at 852, it is incorrect to argue that Harter's entitlement to liquidated damages under the ADEA was not addressed, merely because the issue arose in the context of determining whether the special three year statute of limitations applied.[13]

The actual issue here is whether the 28 May 1993 Cavanaugh Order was clearly erro-

---

**13.** As the 20 Aug. 1991 Decision recognized, liquidated damages and a three-year statute of limitations are heightened benefits that go hand-in-hand from the finding of a willful violation of the ADEA. *See id.,* at 26–27 (citing *EEOC v. Britrail Travel Int'l Corp.,* 733 F.Supp. 855, 863 (D.N.J.), *aff'd,* 919 F.2d 134 (3d Cir.1990)).

Previously, courts had been split over the question of whether the same standard should define "willfulness" in the contexts of determining eligibility for the three year statute of limitations and eligibility for liquidated damages. *See EEOC v.*

*Mt. Lebanon,* 651 F.Supp. 1259, 1261 (W.D.Pa. 1987), *vacated,* 842 F.2d 1480 (3d Cir.1988). Nevertheless, the Supreme Court has indicated the same standard—namely, whether the defendant knew or showed reckless disregard for the matter of whether its conduct was prohibited—should be applied to both determinations. *See McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1988) (applying reckless disregard standard in analogous context of Fair Labor Standards Act, 29 U.S.C. § 255(a)); *see also Hazen Paper Co. v.*

neous or contrary to law in its finding that amending the Complaint would be futile because "[l]iquidated damages under the ADEA are the functional equivalent of punitive damages under New Jersey law." *Id.* at 2–3. Contrary to the argument of Harter, the 28 May 1993 Cavanaugh Order was neither clearly erroneous nor contrary to law.

Under New Jersey law, "punitive or exemplary damages can be awarded to punish aggravated misconduct by the defendant and to deter him and others from repeating it." *Nappe,* 97 N.J. at 48–49, 477 A.2d 1224. To warrant an award of punitive damages in New Jersey, a defendant's conduct must have been "wantonly reckless or malicious." *Id.* at 49, 477 A.2d 1224. More specifically, "[t]here must be an *intentional wrongdoing* in the sense of an 'evil-minded' act or an act accompanied by a wanton and willful disregard of the rights of another." *Id.* (emphasis added) (quoting *DiGiovanni v. Pessel,* 55 N.J. 188, 191, 260 A.2d 510 (1970)). The "key to the right to punitive damages is the wrongfulness of the intentional act." *Id.*

The liquidated damages provision of the ADEA, which entitles a prevailing plaintiff to double damages in cases of willful violations of the ADEA, is also intended to be "punitive in nature." *Trans World Airlines,* 469 U.S. at 125, 105 S.Ct. at 623–24. (citing 113 Cong.

Rec. 2199 (1967)); *see also Turner v. Schering–Plough Corp.,* 901 F.2d 335, 346 (3d Cir. 1990) (liquidated damages have "deterrence and punitive functions"). The Supreme Court has recently re-emphasized that an employer's actions are willful, and hence subject to liquidated damages, when "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Hazen Paper,* —— U.S. at ——, 113 S.Ct. at 1708; *Trans World Airlines,* 469 U.S. at 126, 105 S.Ct. at 624.

The standard for recovery of punitive damages under New Jersey law—which focuses on intentional, wantonly reckless or malicious activity—is at least as stringent a standard for recovery as the "reckless disregard" standard under the ADEA and would actually appear to exceed the ADEA standard.[14] Accordingly, given that the Circuit has already affirmed that Harter has supplied no evidence that GAF's activity satisfied even the reckless disregard standard, *see Harter,* 967 F.2d at 851–52, the 28 May 1993 Cavanaugh Order was neither clearly erroneous nor contrary to law in determining that Harter would not be able to satisfy the standard for punitive damages under New Jersey state law and that, in this respect, amending the Complaint would be futile.[15]

---

*Biggins,* —— U.S. ——, ——–——, 113 S.Ct. 1701, 1708–09, 123 L.Ed.2d 338 (1993).

In any event, even if such a distinction remained, that distinction does not help Harter. First, in *Harter,* the Circuit applied the "reckless disregard" standard—that is, the same standard which must be applied to determine eligibility for liquidated damages under the ADEA—in determining that Harter was not eligible for the three year statute of limitations. *See Harter,* 967 F.2d at 851. Second, even if the alternative standard had been applied to the statute of limitations determination in *Harter*—that is, whether the employer "knew that the ADEA was in the picture"—that standard is a lower standard to satisfy. *See Hazen Paper,* —— U.S. at ——–——, 113 S.Ct. at 1708–09; *Trans World Airlines,* 469 U.S. at 128, 105 S.Ct. at 625. Accordingly, Harter's failure to satisfy the "in the picture" standard indicates he would not be able to satisfy the "reckless disregard" standard with respect to liquidated damages.

**14.** In fact, the New Jersey standard for punitive damages appears to be higher than the willfulness standard for liquidated damages under the ADEA. *Compare Westfield Centre Serv., Inc. v.*

*Cities Serv. Oil Co.,* 158 N.J.Super. 455, 486–87, 386 A.2d 448 (Ch.Div.1978) (punitive damages are recoverable "only where defendant's wrongdoing has been intentional and deliberate and has the character of outrage frequently associated with a crime"), *aff'd,* 172 N.J.Super. 196, 411 A.2d 714 (App.Div.1980), *aff'd,* 86 N.J. 453, 432 A.2d 48 (1981), *with Hazen Paper,* —— U.S. at ——, 113 S.Ct. at 1710 (rejecting argument that liquidated damages under the ADEA requires defendant's conduct to be "outrageous").

**15.** Harter argues at length that punitive damages under New Jersey law and liquidated damages under the ADEA are not substantial equivalents because the *amount* of damages recoverable in each situation is different. *See* Moving Brief at 11–14. This argument is irrelevant. Regardless of how much in punitive damages Harter may be able to recover under New Jersey law, he can recover nothing unless he satisfies the standard for punitive damages established in *Nappe.* Accordingly, because this court and the Circuit have already determined that Harter has failed to satisfy the equivalent or even lower standard required for liquidated damages under the

### 3. *Election of Remedies Bar*

■ As a final ground for denying leave to amend the Complaint, Judge Cavanaugh determined that Harter's proposed state law claims were barred by the election of remedies provision of the NJLAD, N.J.S.A. 10:5–27. *See* 28 May 1993 Cavanaugh Order at 4–8. In so holding, the 28 May 1993 Decision was neither clearly erroneous nor contrary to law.

Under the NJLAD, an aggrieved party may elect either to file suit in New Jersey Superior Court or to file a complaint with the New Jersey Division of Civil Rights. *See* N.J.S.A. 10:5–13. If an aggrieved party chooses the latter course of action and seeks administrative relief, the party is prohibited from subsequently seeking relief in the New Jersey state courts, except through the appellate process.

■ Section 10:5–27 provides in pertinent part:

> [T]he procedure herein provided shall, while pending, *be exclusive;* and the final determination therein shall exclude *any other action,* civil or criminal,[16] based on the same grievance of the individual concerned.

*Id.* (emphasis added); *see also Pittman v. La Fontaine,* 756 F.Supp. 834, 842 (D.N.J.1991) ("claimant's election to pursue grievance before the DCR serves to waive the claimant's right to pursue in state court other avenues of relief for the same grievance"); *Ferrara v. Tappan Co.,* 722 F.Supp. 1204, 1205 (D.N.J. 1989) (same) (citing *Christian Bros.,* 86 N.J. 409, 432 A.2d 26; *Giammario v. Trenton Bd. of Educ.,* 203 N.J.Super. 356, 497 A.2d 199 (App.Div.), *cert. denied,* 102 N.J. 336, 508 A.2d 212 (1985), *cert. denied,* 475 U.S. 1141, 106 S.Ct. 1791, 90 L.Ed.2d 337 (1986)). Although a party objecting to a DCR determination may appeal to the Appellate Division

of the New Jersey Superior Court (the "Appellate Division"), *see* N.J.S.A. 10:5–21, voluntary abandonment of such an appeal does not enable an aggrieved party to seek alternative relief by way of a separate action in state court. *See Hermann v. Fairleigh Dickinson Univ.,* 183 N.J.Super. 500, 504, 444 A.2d 614 (App.Div.) (involving DCR determination of "no probable cause"), *cert. denied,* 91 N.J. 573, 453 A.2d 884 (1982).

As Judge Cavanaugh correctly explained:

> In the case at bar, after a hearing by the DCR, a Finding of No Probable Cause was issued but not appealed. Because the DCR decision was a final appealable determination, and [Harter] did not pursue his appellate remedy, the finding of no probable cause must be the final word regarding [Harter's] NJLAD claim.

28 May 1993 Cavanaugh Order at 5. Because Harter chose to pursue the "swifter and less expensive" administrative route when he filed the DCR Verified Complaint, and because he never pursued his appeal from the DCR to the Appellate Division, he elected an administrative remedy and is prohibited by N.J.S.A. 10:5–27 from asserting related state law claims in an independent court judicial action, including as pendant claims in this action. *See, e.g., Pittman,* 756 F.Supp. at 842–44.

Harter concedes N.J.S.A. 10:5–27 provides "a true election of remedies" and mandates that "once [a party] makes this election he cannot avail himself of the other avenue of relief." Moving Brief at 15–16. Nevertheless, he argues the ADEA scheme requires that he be allowed to pursue alternative state law theories of relief in Federal court. Harter argues:

> [T]he ADEA mandates that one seeking to avail himself of the benefits of that statute must first seek to exhaust administrative remedies before the EEOC and the state

---

ADEA, it was neither clearly erroneous nor contrary to law for Judge Cavanaugh to conclude that amending the Complaint for the purpose of recovering punitive damages under New Jersey law would be futile.

**16.** As GAF suggests, *see* Opp. Brief at 15–17, the language of N.J.S.A. 10:5–27 precludes both Harter's proposed NJLAD claim and his proposed claim under the New Jersey Constitution, given

that the section bars *"any* other action, civil or criminal, based upon the same grievance." *Id.; see also Christian Brothers Inst. v. Northern New Jersey Interscholastic League,* 86 N.J. 409, 415 n. 3, 432 A.2d 26 (1981) (NJLAD election of remedy provision also barred actions "grounded on alleged violations of other state or [F]ederal statutes or of constitutional law").

civil rights agency if one exists. Thus in a state such as New Jersey, a plaintiff seeking relief under the ADEA is compelled to chose the administrative prong [of the NJLAD] before he can sue civilly in [F]ederal court. . . .

If . . . a plaintiff is compelled, as the price of [F]ederal jurisdiction, to pursue a state administrative remedy which would preclude asserting that state claim in his otherwise properly filed [F]ederal suit, that creates a terrible, unintended and unnecessary dilemma for such a plaintiff. Taken literally, in an ADEA suit one cannot assert a state claim because of the election of remedies bar. This, we submit is not what Congress intended and not what due process demands.

Moving Brief at 17–18.

Harter's argument is without merit. As an initial matter, it is observed Harter's assertion of Congressional intent is made without any citation to legal authority, either in the form of case law or legislative history. Moreover, regardless of whether Harter's election was "forced" by the ADEA, as argued by Harter, this argument has been rejected in the context of a similar New York statute. *See Promisel*, 943 F.2d at 257 (discussing interplay of ADEA and N.Y.Exec. Law § 297); *Hunnewell v. Manufacturers Hanover Trust Co.*, 628 F.Supp. 759, 761 (S.D.N.Y.1986) (same).

In *Promisel*, New York Executive Law § 297, like N.J.S.A. 10:5–27, contained an election of remedies provision for discrimination claims which required that a plaintiff could bring either an administrative action or a court proceeding, but not both. 943 F.2d at 256–57. Moreover, once the plaintiff commenced an administrative proceeding, the plaintiff could not bring a court action while the administrative proceeding was ongoing.[17] *Id.* Discussing the New York statute in conjunction with a motion to add pendent state claims to a Federal ADEA action, the *Promisel* court explained:

In applying pendent jurisdiction, [F]ederal courts are bound to apply state substantive law to the state claim. This includes *any restrictions* set by the state on whether a plaintiff may bring a court action regarding the claim. If a state would not recognize a plaintiff's right to bring a state claim in state court, a [F]ederal court exercising pendent jurisdiction, standing in the shoes of a state court, must follow the state's jurisdictional determination and not allow the claim to be appended to a [F]ederal law claim in [F]ederal court.

Therefore a [F]ederal court cannot exercise pendant jurisdiction over a state claim for age discrimination during an ongoing state administrative proceeding. *This is true even when plaintiff's election of an administrative remedy is "forced" by the filing of a [F]ederal complaint with the EEOC that is then automatically referred to the SDHR* [New York State Division of Human Rights]. Under New York law, the EEOC's action is deemed to exercise plaintiff's option for an administrative forum.[18]

*Promisel*, 943 F.2d at 257 (emphasis added) (citations omitted); *see also Hunnewell*, 628 F.Supp. at 761 (same).

Accordingly, because N.J.S.A. 10:5–27 explicitly limits a plaintiff's choice of forum, the fact that Harter pursued an administrative solution rather than filing a state court law suit, regardless of the reason, prohibits him from now seeking to bring those state law

---

17. This is not a case, as those cited by Harter, in which a plaintiff withdrew a verified complaint from the DCR prior to a determination of no probable cause. *See* Moving Brief at 18–19 (citing *Weber v. LDC/Milton Roy Co.*, 42 F.E.P. Cases 1507, 1515 (D.N.J.1986)). Although the NJLAD does not appear to prohibit a plaintiff from withdrawing his or her DCR complaint, in this case, Harter did not seek an administrative dismissal of his Verified DCR Complaint prior to commencing his Federal ADEA suit or at any other time.

18. In *Promisel*, the court ultimately permitted plaintiff to append his state claims because the New York statute contained an additional provision which provided that "a plaintiff whose complaint before the state agency is dismissed for administrative convenience may seek a court remedy." 943 F.2d at 257. Because no such provision is contained in N.J.S.A. 10:5–27, the result in *Promisel* is inapplicable in the case *sub judice*.

claims in Federal court.[19] Pursuant to N.J.S.A. 10:5–27, these claims could not be brought in state court and, hence, cannot be brought here. *Promisel,* 943 F.2d at 257; *Hunnewell,* 628 F.Supp. at 761.

Harter further argues that prohibiting his state law claims on the ground of the election of remedies bar is not proper because "the DCR administrative procedure does not pass muster as a hearing on the merits compared to the type of hearing a plaintiff will receive in [F]ederal court." Moving Brief at 18. This argument is also without merit. While it is true that a judicially-unreviewed state administrative determination has no preclusive effect in a Federal ADEA suit, *see* 5 July 1991 Circuit Opinion at 1 (citing *Astoria Federal,* — U.S. ——, 111 S.Ct. 2166, 115 L.Ed.2d 96) Harter is not unfairly prejudiced by the election of remedies bar.

Pursuant to N.J.S.A. 10:5–21, Harter retained the right to appeal to the Appellate Division the DCR determination of no probable cause. *See id.* However, rather than awaiting the DCR determination and then filing an appeal to the Appellate Division, Harter *chose* to file the Complaint in Federal court asserting a cause of action under the ADEA. *See supra* at n. 4. Accordingly, even assuming the DCR finding does not constitute proper judicial review of Harter's NJLAD claims, it was Harter who deprived himself of such review by electing administrative review and failing to appeal the DCR

finding to the Appellate Division. *See Hermann,* 183 N.J.Super. at 504, 444 A.2d 614.

Harter's argument with relation to *Astoria Federal* is similarly misplaced. Again, although the Supreme Court in *Astoria Federal* indicated that an unreviewed state administrative determination has no preclusive effect over a *Federal* age discrimination action, *see* — U.S. at ——, 111 S.Ct. at 2170–73, this finding does not affect the reviewability of a *state law* age discrimination claim.[20] In factual scenarios similar to this case, New Jersey courts have rejected the argument posed here by Harter. For instance, as the court stated in *Hermann:*

> Here, plaintiff elected the administrative route. When her grievance was dismissed for lack of probable cause, she was *not deprived of judicial review* of the propriety of that determination. She withdrew her appeal in which she could have pressed her argument.... "The proper procedure was to raise these claims before the Appellate Division on appeal...." By voluntary abandonment of the appellate process, she may not circumvent the statutory exclusion....
>
> The adverse [DCR] finding of no probable cause was a final appealable determination. Such a finding is a final order, N.J.A.C. 13:4–15.3, and a final order of the Director of the [DCR] is appealable to the Appellate Division....
>
> The statute prohibits additional resort to the judicial system *except for appellate*

---

19. In *Promisel,* the defendant was represented by John A. Craner, Esq. ("Craner"); who also is the attorney of record for plaintiff in this case. Ironically, it was Craner who, in *Promisel,* argued with certain success that state law election of remedies generally prohibits a plaintiff from appending state law claims to his Federal ADEA complaint. *See* 943 F.2d at 256.

20. Harter has confused the issue of claim preclusion with the issue of bar by an election of remedies statute. *See* 18–22. Unlike *Astoria Federal,* the immediate issue is not one of claim preclusion, in that the issue is not whether Harter's state law claims have already been decided by the DCR and deserve preclusive effect. Rather, the issue is whether, given the election of remedies bar of N.J.S.A. 10:5–27, Harter's proposed state law claims may be asserted in an independent court action and heard as pendant claims in this case.

Moreover, even if the immediate issue concerned claim preclusion, the decision in *Astoria Federal* would not affect whether, under New Jersey law, a decision of the DCR had preclusive effect over other *state law claims* based upon the same grievance. *See Hermann,* 183 N.J.Super. at 504–05, 444 A.2d 614. As the 28 May 1993 Cavanaugh Order explained:

> [*Astoria Federal*] addressed the issue of whether *res judicata* acted to bar a subsequently filed discrimination claim under *[F]ederal law* based on the same facts that provided the basis for a prior state agency finding under state law of no probable cause. That is not the case here. [Harter]'s [F]ederal ADEA claim is alive and well; it is the amendment of a four year old state law claim that [GAF] opposes.

28 May 1993 Cavanaugh Order at 9 (emphasis added).

*review* of an adverse administrative determination. Having *voluntarily abandoned* her appeal from the finding of no probable cause, *plaintiff may not now seek alternative relief by way of a trial in the law division based upon the same grievance.* *Hermann,* 183 N.J.Super. at 504–05, 444 A.2d 614 (emphasis added).

Because the courts of New Jersey would find Harter's state law claims prohibited by the election of remedies bar, based on the initiation of state administrative proceedings and on the voluntary decision of Harter not to pursue an appeal to the Appellate Division of the DCR's finding of no probable cause, Harter is not entitled to pursue those state law claims in this court. *Promisel,* 943 F.2d at 257; *Hunnewell,* 628 F.Supp. at 761; *see also Haynes v. Marshall,* 887 F.2d 700, 705 (6th Cir.1989) (restrictions placed by state law on commencing judicial action must be considered when exercising pendant jurisdiction).

Finally, Harter argues filing of the Complaint in this action automatically stayed proceedings before the DCR, pursuant to Section 14(a) of the ADEA, 29 U.S.C. § 633(a).[21] Moving Brief at 23–24. According to Harter, this stay had the effect of voiding the DCR determination of no probable cause and, therefore, "clearly [Harter] should have the right to amend his complaint to assert pendant causes of action under state law." *Id.* at 23.

This argument is meritless. As an initial matter, Harter again miscomprehends the election of remedies bar. Harter initiated proceedings before the DCR for the purpose of determining his age discrimination claims. By so doing, he was precluded under New Jersey law from pursuing an independent state court action with regard to those claims. Thus, even if filing of the ADEA complaint stayed DCR proceedings prior to issuance of the finding of no probable cause, as argued by Harter, Harter does not explain why this stay lifts the election of remedies

bar and entitles him to pursue state law claims otherwise barred by state law.

As Judge Cavanaugh discussed in the 28 May 193 Cavanaugh Order, this court has already addressed the applicability of 29 U.S.C. § 633(a) to this case. In the 27 Nov. 1990 Decision, it was determined that Section 633(a) "was intended to apply to ongoing state lawsuits rather than mere actions before state administrative agencies." 27 Nov. 1990 Decision at 45. In reaching this result, the 27 Nov. 1990 Decision observed:

> In *Sussman v. Vornado, Inc.,* 90 F.R.D. 680, 690 (D.N.J.1981) the court relied on *Wagner v. Sperry Univac,* 458 F.Supp. 505 (E.D.Pa.1978), *aff'd,* 624 F.2d 1092 (3d Cir. 1980), which stated: "[S]ection 14(a) may quite plausibly be read as applying only to *actions brought in state court,* rather than as applying to all actions based on state law." *Sussman,* 90 F.R.D. at 690 (citing *Wagner,* 458 F.Supp. at 519 n. 6) (emphasis added)....

27 Nov. 1990 Decision at 43. Moreover, with regard to legislative history, it was explained:

> The interpretations of *Sussman* and *Wagner* are consistent with the legislative history of section 14(a). In the Senate Report on the ADEA Amendments of 1978 the superseding clause of section 14(a) is interpreted as follows:

> ["]The last part of Section 14(a) states that 'upon commencement of action under this Act such action shall supersede any State action.' ... As stated in [the committee] reports [in 1967] 'commencement of an action under this act shall be a stay on any State action previously commenced.' (S.Rep. No. 723, 90th Cong., 1st Sess. (1967) at 6, 11; H.R.Rep. No. 805, 90th Cong., 1st Sess., (1967) at 6, 11). In other words, if a *lawsuit* under a State age discrimination law is pending at the time a suit under the ADEA is filed, the *State lawsuit* would have to be immediately held in abeyance, pending a final resolution of the [F]ederal litigation or a determination

---

**21.** Section 14(a) provides:
Nothing in this chapter shall affect the jurisdiction of any agency of any State performing like functions with regard to discriminatory employment practices on account of age except

that upon commencement of action under this chapter such action shall supersede any State action.
29 U.S.C. § 633(a).

that the [F]ederal and State actions are not coterminous in nature.["]

27 Nov. 1993 Decision at 44 (citing Sen.Rep. No. 95–493, 95th Cong., 2d Sess. (quoted in 1978 U.S.C.C.A.N. at 509) (emphasis added)). Accordingly, the 27 Nov. 1990 Decision concluded:

> The legislative history of section 14(a) and the Circuit's interpretation of the statute clearly indicate that the "superseding clause" of section 14(a) was intended to apply to ongoing state lawsuits rather than mere actions before state administrative agencies. Indeed *Sussman* and *Wagner* made the distinction quite clear in stating that section 14(a) applied to "actions brought in state court, rather than as applying to all actions based on state law." *Sussman*, 90 F.R.D. at 690 (citing *Wagner*, 458 F.Supp. at 519 n. 6).
>
> Application of the "superseding clause" to matters such as the instant action would serve to undermine the purpose and meaning of all administrative bodies. As the court in *Stillians* [*v. Iowa*, 843 F.2d 276 (8th Cir.1988)], noted, if litigants were permitted to pursue their claims in state administrative bodies and then allowed to proceed to [F]ederal court *de novo*, the state administrative proceeding would be reduced to nothing more than an opportunity to test his case and thereby practice his presentation without any adverse consequences. 843 F.2d at 282.

27 Nov. 1990 Decision at 45.

Because, as explained by Judge Cavanaugh, *see* 28 May 1993 Cavanaugh Order at 8, the Circuit neither addressed nor disturbed this aspect of the 27 Nov. 1990 Decision when it reversed that decision, this interpretation of 29 U.S.C. § 633(a) remains the law of this case and precludes the argument made by Harter.[22] *See Devex Corp. v. General Motors Corp.*, 857 F.2d 197, 199 (3d Cir.1988), *cert. denied sub nom., Techno-*

*graph Liquidating Trust v. General Motors Corp.*, 489 U.S. 1015, 109 S.Ct. 1128, 103 L.Ed.2d 190 (1989).

In sum, the finding of the 28 May 1993 Cavanaugh Order that Harter's proposed state law claims are barred by the election of remedies bar of N.J.S.A. 10:5–27, thereby making amendment of the Complaint inappropriate, was neither clearly erroneous nor contrary to law and is affirmed.

### C. Certification Pursuant to 28 U.S.C. § 1292(b)

Harter states that "in the event the court rejects all or part of our arguments, we would respectfully ask the court to certify this order as involving a controlling question of law," pursuant to 28 U.S.C. § 1292(b). Moving Brief at 25.

Certification of an order under section 1292(b) requires a finding that the matter (1) "involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion" and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also Racing Strollers, Inc. v. Tri Indus., Inc.*, 878 F.2d 1418, 1418 (Fed.Cir.1989); *Bachowski v. Usery*, 545 F.2d 363, 368 n. 24 (3d Cir.1976).

Certification under section 1292(b) "is not mandatory; indeed, permission to appeal is wholly within the discretion of the courts, even if the [section 1292(b)] criteria are present." *Bachowski*, 545 F.2d at 368. As one court has explained:

> When evaluating the [section 1292(b)] factors, the court must remember that certification is generally not to be granted. Section 1292(b) was created as a means by which courts could, under a limited set of circumstances, avoid problems created by the final judgment rule; Section 1292(b)

---

**22.** Harter cites *Promisel* for the proposition that 29 U.S.C. § 633(a) operates as a stay on state administrative proceedings, as well as on state judicial actions. *See* Moving Brief at 23–24. Even if this argument is correct, *Promisel* does not assist Harter because the contrary remains the law of this case. Moreover, the *Promisel* court explained that 29 U.S.C. § 633(a) "stays,

but *does not dismiss,* the state action." 943 F.2d at 255 (emphasis added). Accordingly, *Promisel* supports the argument that the state administrative proceeding remains active, while the ADEA action is pending and, therefore, that the election of remedies bar continues to bar claims such as those now proffered by Harter.

was not designed to circumvent the general rule against piecemeal litigation.

*Max Daetwyler Corp. v. Meyer*, 575 F.Supp. 280, 282 (E.D.Pa.1983).

### a. *Controlling Question of Law*

■ The Third Circuit has defined a controlling question of law to "encompass at the very least every order which, if erroneous, would be reversible error on final appeal." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir.), *cert. denied*, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974). The *Katz* court reasoned that controlling means "serious to the conduct of the litigation, either practically or legally." *Id.* Among the practical concerns to be considered are saving the time of the district court and minimizing the expense to the litigants. *Id.*

The *Katz* court concluded: "The key consideration is not whether the order involves the exercise of discretion, but whether it truly implicates the policies favoring interlocutory appeal." *Id.* at 756. Those policies include "the avoidance of harm to a party pendente lite from a possibly erroneous interlocutory order and the avoidance of possibly wasted trial time and litigation expense." [23] *Id.*

### b. *Substantial Difference of Opinion*

■ The fact that the disposition of an order was not to a party's liking does not mean that it presents "a substantial ground for difference of opinion" that requires certification of an order for interlocutory appeal. 28 U.S.C. § 1292(b); *see Max Daetwyler*, 575 F.Supp. at 282 ("motion for certification should not be granted merely because a party disagrees with the ruling of the district judge"). The decision in *Max Daetwyler* indicates the term "a substantial ground for difference of opinion" does not refer to a difference of opinion between the court and the party seeking certification. *Id.* at 283. Rather, the term refers to the legal standard applied in the decision for which certification is sought and whether other courts have substantially differed in applying that standard. *Id.*

### c. *Advancement of the Litigation*

A party seeking certification must show an immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The purpose of section 1292(b) is "to permit decision of legal issues as to which there is considerable question without requiring the parties first to participate in a trial that may be unnecessary...." *Johnson v. Alldredge*, 488 F.2d 820, 823 (3d Cir.1973), *cert. denied sub nom., Cronrath v. Johnson*, 419 U.S. 882, 95 S.Ct. 148, 42 L.Ed.2d 122 (1974). Typically, section 1292(b) is applied in situations where, if the trial court decision were reversed on appeal, the litigation would then end. *See, e.g., Katz*, 496 F.2d at 750; *Gorso v. Bell Equip. Corp.*, 476 F.2d 1216 (3d Cir.1973); *Shapiro v. Paramount Film Distrib. Corp.*, 274 F.2d 743 (3d Cir.1960).

### d. *Harter's Motion For Certification*

■ Harter has failed to sustain his burden of showing certification is appropriate. Harter, in support of the motion, only conclusorily restates the standard for determining when certification is appropriate. Moving Brief at 25. Harter has failed even to indicate what is the controlling question of law over which there is a substantial dispute. *Id.* Nor has Harter attempted to explain how denying leave to amend the Complaint, as discussed above, would be subject to reversible error on final appeal. *Katz*, 496 F.2d at 755.

Accordingly, the request by Harter for certification is without merit and is denied.

*Conclusion*

For the foregoing reasons, the objections of Harter to the 28 May 1993 Cavanaugh Order are overruled. The 28 May 1993 Cavanaugh Order, which denied the motion of Harter to amend the Complaint, was neither clearly erroneous nor contrary to law and is

**23.** Applying this standard, the *Katz* court heard an interlocutory appeal of a district court order granting certification of a plaintiff class with potentially hundreds of class members. The Third Circuit noted that, had the petition for interlocutory appeal been denied, a tremendous amount of time, effort and money would have been wasted litigating a case on behalf of an enormous class which had been improperly certified. *Id.*

affirmed. The motion to amend the Complaint is denied.